# United States Court of Appeals for the Federal Circuit

---

**RES-CARE, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5035

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0251, Senior Judge Eric G. Bruggink.

---

Decided: November 21, 2013

---

JONATHAN D. SHAFFER, Smith Pachter McWhorter PLC, of Tysons Corner, Virginia, argued for plaintiff-appellant. With him on the brief was MARY PAT BUCKENMEYER. Of counsel were JOHN S. PACHTER, and ARMANI VADIEE, of Vienna, Virginia.

AMANDA L. TANTUM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. McCARTHY,

Assistant Director. Of counsel on the brief were DAVID R. KOEPPEL, and PETER J. DICKSON, Attorney's, United States Department of Labor, of Washington, DC.

————————————

Before NEWMAN, PLAGER, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

This case turns on the interpretation of the phrase "competitive basis" in the Workforce Investment Act ("WIA"). *See* 29 U.S.C. § 2887(a)(2)(A). Res-Care, Inc. ("Res-Care") appeals the decision of the United States Court of Federal Claims ("Claims Court") interpreting the statute as permitting the United States Department of Labor ("DOL") to select a contractor for the Blue Ridge Job Corps Center ("Blue Ridge") program through a set-aside for small businesses. For the reasons set forth below, we affirm.

## BACKGROUND

Under WIA, DOL administers a national Job Corps program that provides education, training, and support services to help at-risk youth obtain employment. 29 U.S.C. §§ 2881, 2884. There are 125 Job Corps Centers ("JCCs") across the nation, including Blue Ridge in Marion, Virginia, which Res-Care has operated since 1998.

In December 2011, DOL published a Sources Sought Notice for a Request for Information (the "Request") seeking information from potential bidders on an upcoming procurement for the operation of Blue Ridge. At the time, Res-Care was operating Blue Ridge under a contract that expired on March 31, 2013. The Request invited "[a]ll interested parties" to submit a response but specifically encouraged firms that qualify as small businesses to respond with a "capabilities statement" that demonstrated their ability to operate the facility

successfully. In response to the Request, one large business and four small businesses submitted capabilities statements. Res-Care, a large business, did not respond to the Request.

Based on the responses, a DOL contracting officer found the large business and two of the four small businesses capable of operating Blue Ridge. In her review, the contracting officer considered twelve relevant areas of experience and the financial resources of each business. She specifically found that both small businesses were capable under "*all* of the capability areas identified in the [Request]." J.A. 3063. In particular, she found that, based on the responses from the two capable small businesses, DOL would likely receive bids (1) from at least two responsible small businesses and (2) at fair market prices. Because both of these requirements of Federal Acquisition Regulation ("FAR"), 38 C.F.R. § 19.502-2(b) (the so-called "Rule of Two"), had been met, the contracting officer recommended conducting the Blue Ridge contract selection as a small business set-aside. DOL subsequently issued a presolicitation notice indicating that the next Blue Ridge contract, with a value of $25 million, would be solicited as a "100% Set-Aside for Small Business" for the two-year base period beginning April 1, 2013, with three unilateral option years.

On April 18, 2012, Res-Care filed its bid protest with the Claims Court alleging, *inter alia*, that DOL violated WIA by setting aside the Blue Ridge contract for small businesses.[1] Section 2887 of WIA describes how entities

---

[1]   Using the North American Industry Classification System ("NAICS"), the contracting officer designated the Blue Ridge contract under NAICS code 611519. NAICS codes are used for classifying economic activities or industries according to size and revenue. Under NAICS code 611519, Blue Ridge could be awarded only to

are selected for managing JCCs. 29 U.S.C. § 2887(a)(2)(A). It provides that DOL shall select entities "on a competitive basis," but enumerates certain exceptions set forth in 41 U.S.C. § 3304(a)–(c) of the Competition in Contracting Act ("CICA"). *Id.* The exceptions in § 3304(a)–(c) describe instances in which the government may award a contract on a noncompetitive basis. Res-Care argued that setting aside the Blue Ridge contract for small businesses violated the "competitive basis" provision in § 2887.

Before the Claims Court, Res-Care sought to supplement the administrative record with a declaration of its Executive Vice-President of Operations, Richard Myers (the "first Myers declaration"), and with a report entitled "Analysis of Small Business Contracting in Job Corps" (the "Rell & Doran Report"). Based on assorted criteria, the report concluded that large businesses outperform small businesses in administering JCCs. The Claims Court denied Res-Care's request to supplement the administrative record with the Rell & Doran Report but admitted the first Myers declaration for the sole purpose of evaluating whether Res-Care was entitled to injunctive relief. *Res-Care, Inc. v. United States*, No. 12-251 C, slip. op. at 1 (Fed. Cl. July 11, 2012).

On the parties' cross-motions for judgment on the administrative record,[2] the Claims Court denied Res-

---

businesses with annual receipts under $35.5 million. Res-Care's annual receipts exceed this cap, and therefore, Res-Care could not compete for the Blue Ridge contract under the set-aside.

[2]    In its motion, Res-Care sought to supplement the administrative record with a second declaration of Richard Myers (the "second Myers declaration"), which the Claims Court denied. *Res-Care, Inc. v. United States*, 107 Fed. Cl. 136, 138 (2012).

Care's motion and granted the government's motion, dismissing the case. The court determined that the phrase "competitive basis" in WIA did not mean "full and open competition," reasoning that the ordinary meaning of the phrase simply requires two or more potential bidders to seek the contract award. *Res-Care, Inc. v. United States*, 107 Fed. Cl. 136, 141–42 (2012). On that basis, the court concluded that WIA did not preclude small business set-asides in which two or more small businesses compete for a JCC contract.[3] *Id.* The court also found that the contracting officer did not violate the Rule of Two in setting aside Blue Ridge for small businesses. *Id.* at 142.

Res-Care now appeals to this court, reiterating its contention that WIA does not permit small business set-asides. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I

We review the grant of a motion for judgment on the administrative record without deference. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The first question before this court is one of pure statutory interpretation: whether WIA's "competitive basis" language permits small business set-asides. Because the underlying issue is a question of statutory interpretation, it is also subject to review without deference. *Mudge v. United States*, 308 F.3d 1220, 1224 (Fed. Cir. 2002).

---

[3] In the alternative, the court determined that, if WIA was unclear, DOL was entitled to deference in construing WIA as permitting small business set-asides under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 843–45 (1984). *Res-Care*, 107 Fed. Cl. at 142. Because we find § 2887 unambiguous, we do not reach this alternative ground.

The relevant language of § 2887 states:

*Except as provided in subsections (a) to (c) of section 3304 of Title 41*, the Secretary shall select *on a competitive basis* an entity to operate a Job Corps center and entities to provide activities described in this subchapter to the Jobs Corps center.

29 U.S.C. § 2887(a)(2)(A) (emphasis added).

When interpreting a statute, we begin our analysis with the language of the statute itself. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320 (Fed. Cir. 2003). "If the statutory language is plain and unambiguous, then it controls, and we may not look to the agency regulation for further guidance." *Id.* (citing *Chevron*, 467 U.S. at 842–43). The meaning of the language is determined in the pertinent overall statutory context. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents*, 508 U.S. 439, 455 (1993).

To interpret the term "competitive basis," we presume that the term has its ordinary and established meaning. *See Info. Tech.*, 316 F.3d at 1320. As WIA does not define "competitive basis,"[4] we may refer to dictionary definitions to determine the ordinary meaning of an undefined statutory term. *Id.* "Competitive" is defined as "characterized by, arising from, or designated to exhibit rivalry among two or more equally matched individuals or forces especially for a particular goal, position or reward," and as "involving, or determined by competition." *See*

---

[4]    CICA also does not define "competitive basis" but provides a definition for "competitive basis procedures" in the context of "an individual purchase of property or services" made under a multiple-award contract. *See* 41 U.S.C. § 3302(c)(2). That definition sheds no light on the issue before us, and neither party relies on it.

*Res-Care*, 107 Fed. Cl. at 141 (quoting Webster's II New Riverside Univ. Dict. 290 (1984)). "Competition" means a "rivalry between two or more businesses striving for the same customers or market." *Id.* Neither definition mandates an unencumbered contest open to the entire realm of all possible bidders.[5] Authorized selection criteria may circumscribe the range of permitted rivals. Here, Congress clearly viewed the use of set-asides for small businesses as "competitive" as indicated by the CICA. *See* 41 U.S.C. § 3303(b) (providing that "competitive procedures" shall be used for small business set-asides); 41 U.S.C. § 152(4) (defining "competitive procedures" to include competition limited to further Small Business Act). A selection process confined to multiple small businesses bidding to operate a JCC thus satisfies the statutory "competitive basis" requirement.

Res-Care argues for an alternate construction of this language. In Res-Care's view, WIA must be read in conjunction with CICA, which requires "full and open competition" in the government procurement process, "[e]xcept as provided in sections 3303, 3304(a), and 3305" of Title 41. *See* 41 U.S.C. § 3301(a)(1). Those three exceptions contemplate (1) a small business set-aside exception to CICA's "full and open competition" requirement (§ 3303(b)), (2) examples where the government may use "noncompetitive procedures" (§ 3304), and (3) simplified procedures for small purchases (§ 3305). Because WIA's § 2887 incorporates only one

---

[5] We see no merit in Res-Care's argument that the list of "eligible entities" for operating a JCC in § 2887(a)(1) suggests that DOL must always hold a full and open competition for selecting an operator to all entities who are eligible. As explained above, the "selection process" set forth in § 2887(a)(2) only requires it to be on "a competitive basis."

"exception" from CICA (§ 3304) and no others, such as § 3303(b)'s authorization of small business set-asides, Res-Care argues that the plain meaning of WIA dictates that § 3304 is the only exception allowed by the statute. Under that interpretation, DOL would lack the flexibility and discretion to use small business set-asides in administering WIA and instead must always hold full, open, and unfettered competition among all possible competitors—except in the very special cases when § 3304 applies.

WIA's plain language, however, requires rejection of Res-Care's argument. In § 2887, Congress did not borrow the "full and open competition" phrase from CICA. Instead, § 2887 simply states that selection of a JCC contractor shall occur "on a competitive basis." A cardinal doctrine of statutory interpretation is the presumption that Congress's "use of different terms within related statutes generally implies that different meanings were intended." 2A Norman Singer, *Statutes and Statutory Construction* § 46.06 (7th ed. 2007); *see, e.g.*, *Daw Indus., Inc. v. United States*, 714 F.2d 1140, 1143 (Fed. Cir. 1983) ("The congressional choice of words has a further and more significant consequence. . . . Congress' choice of the different term suggests an intentional difference in meaning."). Here, we must presume that Congress understood the difference between expressions of a particularized form of competition, *i.e.*, "full and open," versus the broader notion represented by "competitive basis." Had Congress intended JCC contractors to be selected solely by "full and open competition," it knew how to use those words and could have done so. It did not.

Res-Care contends that the Claims Court's—and our—interpretation of WIA permits all of CICA's exception provisions to apply to WIA and, thus, renders superfluous § 2887's reference to § 3304 from CICA. That argument again conflates WIA's and CICA's different structures and language. While it is true that § 2887

refers to one provision in CICA, there is no reason to read any other provision of CICA into § 2887 in the way Res-Care advocates. By its terms, § 2887 is straightforward: selections shall be made on a "competitive basis," except in the special situations where the "noncompetitive procedures" set forth in § 3304 of CICA apply. The reference to § 3304 is not mere surplusage. It demonstrates Congress's intent to ensure DOL had the flexibility to use a noncompetitive selection process in certain defined situations. Without the § 3304 reference, DOL's selections under WIA would always have to be performed through some form of competition. With this understanding, it becomes apparent that § 2887's reference to § 3304 is not at all superfluous.

The legislative history offers no support for Res-Care's position. As an initial matter, we note that if the plain language of the statute is unambiguous, then that is controlling. *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 950 (Fed. Cir. 2013). To overcome the plain meaning of a statute, a party must show that the legislative history demonstrates an "extraordinary showing of contrary intentions." *Garcia v. United States*, 469 U.S. 70, 75 (1984) (cautioning that resort to legislative history to interpret an unambiguous statute should only occur in "rare and exceptional circumstances"). The legislative history of WIA contains no discussion of any specialized meaning of "competitive basis," and Res-Care points to nothing in the history demanding or even implying as much. We find nothing in the legislative history that suggests any intent to bar the widespread, established government practice of small business set-asides for this particular category of government contracts.

We therefore conclude that the Claims Court properly construed § 2887(a)(2)(A) to provide DOL the flexibility to use small business set-asides for selecting JCC operators.

## II

Res-Care also argues that the DOL contracting officer violated the Rule of Two when setting aside Blue Ridge, and thus the Claims Court erred in granting judgment to the government. When reviewing a contracting officer's decision in a pre-award bid protest, the Claims Court applies the standards established by the Administrative Procedure Act to decide whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706; *see also Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

On appeal of the Claims Court's judgment on the administrative record, we reapply the deferential "arbitrary or capricious" standard to the agency's decision. *Advanced Data*, 216 F.3d at 1057. This standard requires us to sustain DOL's set-aside if it evinces rational reasoning and consideration of relevant factors. *See id.* at 1057–58.

Before setting aside a contract for small business participation under the Rule of Two, the Federal Acquisition Regulations require that a contracting officer shall determine that a reasonable expectation exists that "at least two responsible small business concerns" will submit offers and that an "award will be made at fair market prices." 38 C.F.R. § 19.502-2(b).

DOL, as a federal procurement entity, has "broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation." *Tyler Const. Grp. v. United States*, 570 F.3d 1329, 1334 (Fed. Cir. 2009). A contracting officer's decision to set aside a contract for small businesses invokes "highly deferential rational basis review." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1368–69 (Fed. Cir. 2009).

Here, the contracting officer reviewed the submissions from potential contractors against twelve "capability requirements" identified in the Request.[6] Applying the first factor of the Rule of Two, she determined that two responding small businesses were "capable under *all* of the capability criteria identified in the [Request]," and no documentation indicated that either business had "questionable past performance or capacity issues." J.A. 3063. The contracting officer also noted that both businesses had submitted past offers at fair market prices for similar work operating other JCCs and had continued to perform those contracts under the fair market prices offered. *Id.* Based on these findings, she concluded that a

---

[6]    Those criteria included: (1) experience providing a comprehensive academic and career technical training program, (2) experience providing food services, medical, dental, and mental health care, (3) experience managing and ensuring data integrity, (4) experience protecting personally identifiable information, (5) experience with facility and construction management, (6) experience providing property management, (7) experience providing residential management, supervision, and meals, (8) experience operating a program that is integrated with the local workforce development systems, employers, and the business community, (9) experience operating a job-training program that reflects the local labor market conditions of the place of contract performance, (10) experience operating a job-training program that is reflective of the workforce investment plans of the state where the program is located and experience taking part in the local workforce investment system of the program's locale, (11) access to financial resources sufficient to satisfy requirements of operating the Blue Ridge JCC for the first 45 days of operation or the ability to obtain them, and (12) experience with the financial management of a cost reimbursement type contract. J.A. 3003.

reasonable expectation existed that the Blue Ridge award would be made at fair market prices. We find no abuse of discretion in the contracting officer's thorough analysis of the submitted materials or her application of the Rule of Two.

Finally, Res-Care contends that it should have been able to supplement the administrative record with declarations and the Rell & Doran Report. The ability to supplement the administrative record before the Claims Court is a limited one. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1378 (Fed. Cir. 2009). In this particular instance, we simply note that none of the opaque and overly generalized extra-record evidence helps Res-Care's cause. It does not contain any negative performance data about the two small businesses that satisfied the Rule of Two. As the Claims Court stated, whether other small businesses, as a general class, performed at lower levels than larger firms has no bearing on the question of whether the contracting officer used appropriate criteria or properly assessed the capabilities of the identified small businesses against those criteria. *See Res-Care*, 107 Fed. Cl. at 142.

For the foregoing reasons, the decision of the United States Court of Federal Claims is affirmed.

**AFFIRMED**

COSTS

No costs.