# United States Court of Appeals for the Federal Circuit

---

**ADAMS AND ASSOCIATES, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5077

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0731, Senior Judge Eric G. Bruggink.

- - - - - - - - - - - - - - - - - - - - - -

**ADAMS AND ASSOCIATES, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5080

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0409, Judge Mary Ellen Coster Williams.

————————————————

Decided: January 27, 2014

————————————————

MICHAEL J. SCHRIER, Jackson Kelly PLLC, of Washington, DC, argued for plaintiff-appellant. On the brief was G. LINDSAY SIMMONS. Of counsel were KATHERINE A. CALOGERO and HOPEWELL H. DARNEILLE, III.

PATRICIA M. MCCARTHY, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MATTHEW P. ROCHE, Trial Attorney. Of counsel on the brief were DAVID R. KOEPPEL and PETER J. DICKSON, Attorneys, Office of the Solicitor (MALS), United States Department of Labor, of Washington, DC.

————————————————

Before LOURIE, DYK, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Adams and Associates, Inc. ("Adams") appeals two orders[1] of the United States Court of Federal Claims, each of which denied Adams's motion for judgment on the administrative record and granted the United States'

————————————————

[1] Although filed as two separate cases, the arguments raised in each of these cases are identical. The only difference is factual: in *Adams I*, the small business set-aside determination was for the Shriver Job Corps Center, while in *Adams II* it was for the Gadsden Job Corps Center.

cross-motion for judgment on the administrative record. *Adams & Assocs., Inc. v. United States* (*Adams I*), 109 Fed. Cl. 340 (Fed. Cl. 2013); *Adams & Assocs., Inc. v. United States (Adams II)*, No. 12-409C (Fed. Cl. Mar. 27, 2013) (Oral Op. & Order) (J.A. 6–37).[2] Because Adams fails to establish that the U.S. Department of Labor's ("DOL") decisions to designate the contracts for the operation of the Gadsden and Shriver Job Corps Centers as small business set-asides were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the Court of Federal Claims is affirmed in both cases.

BACKGROUND

I. The Job Corps Program

The Job Corps program is a national residential training and employment program administered by the DOL. In 1998, Congress passed the Workforce Investment Act, which reformed the Job Corps program and authorized the Secretary of Labor ("the Secretary") to enter into agreements with government agencies or private organizations to operate "Job Corps centers." 29 U.S.C. § 2887 (2006 & Supp. V 2011).

Adams is the incumbent contractor for both the Gadsden and the Shriver Job Corps Centers. Because of the small business limitation placed on the contracts for the follow-on operation of these Centers, Adams cannot compete for the contracts since it does not qualify as a small business.

---

[2] In *Adams I*, the court also denied Adams's motion to strike and its motion for leave to notify the court of the United States' suspension of all Job Corps Center enrollments. In *Adams II*, the court denied Adams's motion to strike. None of these decisions is on appeal here.

## II. The Gadsden Center

Adams was awarded the contract to operate the Gadsden Center in 2004. In April 2011, the DOL declined to exercise its option to extend Adams's contract. Prior to issuing a solicitation for a new contract, the DOL issued a Request for Information ("RFI") to conduct market research regarding the businesses, especially small businesses, that might be willing to compete for the operation of Gadsden. Based on the results of this research, the DOL decided to limit the right to compete for the Gadsden contract to small businesses. Adams filed a pre-award bid protest, in response to which the DOL cancelled the Gadsden solicitation. Adams's protest was then dismissed without prejudice. *Adams & Assocs., Inc. v. United States*, No. 11-665C (Fed. Cl. Oct. 13, 2011) (order dismissing protest).

The DOL then issued a second RFI to collect new market research using a revised set of criteria to evaluate the respondents. The DOL continued to use this revised set of criteria in its subsequent RFIs for Job Corps Center procurements, including for the Shriver Center. Pursuant to the Federal Acquisition Regulation, 48 C.F.R. § 19.303(a) (2012), as part of the RFI, the contract for Gadsden was assigned an industry category code: North American Industry Classification System ("NAICS") 611519,[3] the only code applicable to Job Corps Centers.

---

[3] Each industry category is assigned an NAICS code. The Small Business Administration then imposes a corresponding limitation on company size and revenue to determine which entities will be considered "small" within any industry category. 13 C.F.R. § 121.201 (2012). Respondents to either an RFI or a solicitation notice are required to indicate whether they can be considered small

The small business revenue limit associated with this code is $35.5 million in annual receipts. 13 C.F.R. § 121.201. Therefore, if the contract for the operation of Gadsden were to be set aside for small businesses, any business with more than $35.5 million in annual receipts, including Adams, would not qualify. After conducting its second RFI, the DOL concluded that there was a reasonable expectation that at least two capable small businesses would bid on the Gadsden contract. Therefore, on May 8, 2012, the DOL issued a solicitation notice for the Gadsden contract as a total small business set-aside.

### III. The Shriver Center

Adams's contract to operate the Shriver Center ran from 2008 to 2013. Before issuing a solicitation for a new contract, the DOL issued an RFI to conduct market research regarding businesses that might be willing to compete for the operation of Shriver. This RFI included the criteria developed in the second RFI for Gadsden, and the contract was assigned the same industry code (NAICS 611519). Therefore, like Gadsden, if the Shriver contract were designated for small businesses, any business with more than $35.5 million in annual receipts, including Adams, would not qualify. Six businesses responded to the RFI, four of which were small businesses. Because the DOL concluded that there was a reasonable expectation that at least two of these small businesses would be interested in bidding on the Shriver contract, on October 16, 2012, the DOL issued a solicitation notice for the Shriver Center as a total small business set-aside.

Adams filed two pre-award bid protests in the Court of Federal Claims. In each case, the Court of Federal

businesses according to the size and revenue limitations for the job category.

Claims denied Adams's motion for judgment on the administrative record and granted the United States' cross-motion for judgment on the administrative record. *Adams I*, 109 Fed. Cl. at 344; *Adams II*, J.A. 33. Adams filed a timely notice of appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012).

DISCUSSION

## I. Standard of Review

This court reviews legal determinations of the Court of Federal Claims, such as a judgment on the administrative record, without deference, applying the same standard of review as the Court of Federal Claims. *Dysart v. United States*, 369 F.3d 1303, 1310 (Fed. Cir. 2004) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). Under that standard, this court will not disturb the agency's decision to deny appellant relief unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); *Bannum, Inc. v. United States,* 404 F.3d 1346, 1351 (Fed. Cir. 2005). To the extent an agency's decision involves statutory and regulatory construction, these are questions of law which this court reviews de novo. *Billings v. United States*, 322 F.3d 1328, 1332 (Fed. Cir. 2003).

## II. Legal Framework

The Workforce Investment Act established Job Corps Centers and the process the DOL must follow in selecting center operators. 29 U.S.C. § 2887. The statute requires that the selection process be on a "competitive basis." *Id.* § 2887(a)(2)(A) ("[T]he Secretary shall select on a *competitive basis* an entity to operate a Job Corps center." (emphasis added)). The statute also articulates criteria the Secretary should consider in selecting an operator. *Id.* § 2887(a)(2)(B)(i)(I)–(IV).

To transition to the new framework established by the Workforce Investment Act, including the creation of Job

Corps Centers, the Secretary was given authority in 20 U.S.C. § 9276(c) to promulgate regulations.  20 U.S.C. § 9276 (2006) ("The Secretary . . . shall take such actions as the Secretary determines to be appropriate to provide for the orderly transition from any authority under the Job Training Partnership Act . . . to the workforce investment systems established under the [Workforce Investment Act].").  Under this authority, the Secretary promulgated regulations directing the DOL to apply the procurement procedures of the Small Business Act, 15 U.S.C. § 644 (2006), and the Competition in Contracting Act, 41 U.S.C. § 3303 (2006), through the Federal Acquisition Regulation and the DOL Acquisition Regulations, to the procurement and selection of Job Corps Center operators.  20 C.F.R. §§ 670.310–320 (2012).

The Federal Acquisition Regulation establishes procedures for agencies to make small business set-aside determinations.  48 C.F.R. § 19.502-1 ("Requirements for setting aside acquisitions").  These regulations provide a "contracting officer shall set aside an individual acquisition or class of acquisitions for competition among small businesses when . . . [a]ssuring that a fair proportion of Government contracts in each industry category is placed with small business concerns; and the circumstances described in 19.502-2 [i.e., the so-called "Rule of Two"] . . . exist."  *Id.* § 19.502-1(a)(2).  The Rule of Two requires the "contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that: (1) Offers will be obtained from at least two responsible small business concerns . . . ; and (2) Award will be made at fair market prices."  *Id.* § 19.502-2(b).

## III. The DOL Properly Used Small Business Set-Aside Procedures for the Procurements

### A. The Plain Language of the Workforce Investment Act

The Workforce Investment Act lists as "eligible entities" for operating Job Corps Centers: "a Federal, State, or local agency, an area vocational education school or residential vocational school, or a private organization." 29 U.S.C. § 2887(a)(1)(A). The Act then states that "[e]xcept as provided in subsections (a) to (c) of [§ 3304 of the Competition in Contracting Act pertaining to sole-source situations], the Secretary shall select on a *competitive basis* an entity to operate a Job Corps center." *Id.* § 2887(a)(2)(A) (emphasis added).

To Adams, the plain language of these provisions indicates that Congress intended to establish a "unique procurement method for selecting [Job Corps Center] operators, one which requires DOL to maximize competition among the enumerated eligible entities [in subsection (a)(1)(A)], except in limited, sole-source situations." Appellant's Br. (*Adams I*) 23; Appellant's Br. (*Adams II*) 20. Thus, Adams argues the "unique procurement method" envisioned by the Workforce Investment Act requires full and open competition "among the entire broad pool of eligible entities" as defined by § 2887(a)(1)(A). Appellant's Br. (*Adams I*) 22; Appellant's Br. (*Adams II*) 19. Adams finds support for this contention in the structure of this statutory section: "By setting up the two provisions in this way—first, expressly listing the eligible entities, then explaining that such entities shall be chosen on a competitive basis—Congress expressly and unambiguously intended for the terms 'competitive basis' and 'eligible entities' to be read together." Appellant's Br. (*Adams I*) 24; Appellant's Br. (*Adams II*) 21. In addition, Adams argues that although subsection 2887(a)(1)(A) begins with an explicit reference to the Competition in Contracting Act, the Workforce Investment Act does not mention the

Competition in Contracting Act or other restrictions on competition elsewhere.

To evaluate the lawfulness of an agency's statutory interpretation, courts employ the two-prong test established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984). The court first examines "whether Congress has directly spoken to the precise question at issue," and if so, the agency and the court must comply with Congress's clear intent. *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," a prong-two analysis is warranted, under which the court must determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. As a question of law involving statutory construction, this court applies de novo review.

Neither the plain language of the Workforce Investment Act provisions pertaining to Job Corp Centers, nor the structure of the provisions, forbids the DOL from using the procurement procedures of the Competition in Contracting Act. Indeed, the "competitive basis" provision itself begins with a reference to the Competition in Contracting Act, 29 U.S.C. § 2887(a)(2)(A), refuting Adams's argument that the Workforce Investment Act established a "unique procurement method" that must be implemented in a vacuum. The Court of Federal Claims found that the language of § 2887 was not ambiguous, and the plain meaning of "competitive basis" does not preclude competition among small businesses. *Adams I*, 109 Fed. Cl. at 351; *Adams II*, J.A. 17–19. This court recently agreed with that interpretation in *Res-Care*, a case involving a small business set-aside for another Job Corps Center, holding that "[a] selection process confined to multiple small businesses bidding to operate a [Job Corps Center] . . . satisfies the statutory 'competitive basis' requirement." *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1388 (Fed. Cir. 2013). Notably, Adams does not deny that

small business set-asides are competitive, nor does it dispute the ordinary meaning of the word "competitive" used by the Court of Federal Claims in *Adams I* and *Adams II*, and now by this court in *Res-Care*.

There is also no indication that by listing the eligible entities in subsection (a)(1)(A), Congress intended "competitive basis" in subsection (a)(2)(A) to mean that solicitation must be open to all such entities, particularly since the provision divides the list of eligible entities with an "or." 29 U.S.C. § 2887(a)(1)(A). As stated in *Res-Care*, this court finds "no merit in [the] argument that the list of 'eligible entities' for operating a [Job Corps Center] in § 2887(a)(1) suggests that DOL must always hold a full and open competition for selecting an operator to all entities who are eligible. . . . [T]he 'selection process' set forth in § 2887(a)(2) only requires it to be on 'a competitive basis.'" *Res-Care*, 735 F.3d at 1388 n.5. Limiting competition to small businesses did not contravene the Workforce Investment Act's "competitive basis" requirement.[4]

## B. The DOL Properly Exercised Its Rulemaking Authority Under the Workforce Investment Act

The DOL promulgated regulations applying the procurement procedures of the Competition in Contracting Act via the Federal Acquisition Regulation. 20 C.F.R. §§ 670.300–320. When using the small business set-aside procedures of the Competition in Contracting Act for the Job Corps Center procurements, the DOL was acting in compliance with its own regulations.

---

[4]  As in *Res-Care*, because the court finds the Workforce Investment Act unambiguous as to this issue, a *Chevron* prong-two analysis is unnecessary. *See Res-Care*, 735 F.3d at 1387 n.3.

Adams argues, however, that the DOL's regulations are "unauthorized and unenforceable" because the "DOL lacked any delegation of authority to interpret [the Workforce Investment Act]." Appellant's Br. (*Adams I*) 31–32, 36; *see* Appellant's Br. (*Adams II*) 15, 32. Relying on *Chevron*, Adams contends that the DOL's interpretation of the Workforce Investment Act is not entitled to deference and the DOL was not permitted to determine that small business set-asides are permissible under the Workforce Investment Act.

The DOL derived its authority to promulgate regulations under the Workforce Investment Act from two statutory sources. First, the Workforce Investment Act itself provides "[t]he Secretary may . . . prescribe rules and regulations to carry out this chapter only to the extent necessary to administer and ensure compliance with the requirements of this chapter." 29 U.S.C. § 2939. Adams believes this language indicates that "Congress intended to severely limit DOL's ability to interpret [the Workforce Investment Act] or in any way alter [the Workforce Investment Act's] legislative or policy schemes." Appellant's Br. (*Adams I*) 33 (citations omitted); Appellant's Br. (*Adams II*) 31 (citations omitted). Second, Congress granted the DOL the authority to promulgate regulations to facilitate the transition to the new framework established by the Workforce Investment Act. 20 U.S.C. § 9276(c) ("The Secretary . . . shall take such actions as the Secretary determines to be appropriate to provide for the orderly transition from any authority under the Job Training Partnership Act . . . to the workforce investment systems established under the [Workforce Investment Act]."). Adams asserts that, to the extent the DOL's regulations were promulgated pursuant to 20 U.S.C. § 9276(c), the regulations are ultra vires because they were promulgated after the deadline Adams believes was established by § 9276(c).

Adams offers no support for its interpretation of the statutory grant of rulemaking authority to the DOL in the Workforce Investment Act as one denying substantive rulemaking authority. This court perceives no ambiguity in this authority which would require moving beyond a *Chevron* prong-one analysis. The Workforce Investment Act explicitly authorizes the Secretary to prescribe rules and regulations to administer the Job Corps Center procurement system. While the provision does state that the rulemaking authority is limited "only to the extent necessary to administer and ensure compliance with the requirements of this chapter," 29 U.S.C. § 2939, establishing procurement procedures is necessary to administering the Job Corps Centers. Adams has identified no provision of the DOL's regulations that is unnecessary "to administer and ensure compliance with the requirements of [the Workforce Investment Act]." *Id.* The regulations directing the DOL to apply the procurement procedures of the Small Business Act and the Competition in Contracting Act were properly promulgated.

As to the statutory authority in 20 U.S.C. § 9276, Adams is correct that the statute says the DOL should publish its transition regulations by December 31, 1999, and the DOL did not publish them until August 11, 2000. *See Adams I*, 109 Fed. Cl. at 352. The DOL treated the deadline as a goal, and "not a pre-condition to maintenance of rule-writing authority," and it provided a reasonable explanation for the delay. *Id.* The regulations fully comply with the Workforce Investment Act and enabled the DOL to transition to its new framework, including establishing Job Corps Centers. To the extent the effect of this deadline creates an ambiguity in the statutory grant of rulemaking authority, under a *Chevron* prong-two analysis, the DOL's interpretation of its authority was reasonable. This is not a case where the enforcement of a regulation is squarely at odds with the statutory requirements. *See Schism v. United States*, 316

F.3d 1259, 1285 (Fed. Cir. 2002). Accordingly, the DOL promulgated its regulations within the discretion of its rulemaking authority.

IV. The DOL Properly Applied the "Fair Proportion" Determination of the Federal Acquisition Regulation

Adams also argues that, even if the Federal Acquisition Regulation was applicable to these procurements, the DOL did not apply the Regulation correctly. To Adams, "the plain language of [Federal Acquisition Regulation §] 19.502-1 . . . explicitly includes *two* requirements for setting aside acquisitions: the 'fair proportion' determination *and* the Rule of Two." Appellant's Br. (*Adams I*) 19; Appellant's Br. (*Adams II*) 16. As applied to Gadsden and Shriver, Adams contends that the contracting officer was required to make a threshold "fair proportion" determination before applying the Rule of Two.

The Federal Acquisition Regulation provides

(a) The contracting officer shall set aside an individual acquisition or class of acquisitions for competition among small businesses when—

(1) It is determined to be in the interest of maintaining or mobilizing the Nations full productive capacity, war or national defense programs; *or*

(2) Assuring that a *fair proportion* of Government contracts in each industry category is placed with small business concerns; *and* the circumstances described in 19.502-2 or 19.502-3(a) [i.e., the Rule of Two] exist.

48 C.F.R. § 19.502-1(a)(1)–(2) (emphases added). Transposing the language of subsection (a)(1) of the Regulation onto subsection (a)(2), Adams reads the provision as: "a [contracting officer] shall set aside an individual acquisition when, and only when, (1) 'it is determined . . . to be in the interest of assuring a fair proportion of Government

contracts in each industry category is placed with small business concerns;' ***and*** (2) 'the circumstances described in 19.502-2 [i.e., the Rule of Two] . . . exist.'" Appellant's Br. (*Adams I*) 39; Appellant's Br. (*Adams II*) 36. Adams grounds its argument in the conjunctive use of *and* within subsection (a)(2), which suggests to Adams that each step must be performed by a contracting officer in sequence. Adams implies it was improper for the DOL to make the "fair proportion" determination and the "Rule of Two" determination at two different agency levels.

To reach its interpretation, Adams had to rephrase the Federal Acquisition Regulation. That formulation is refuted by the plain language of the Regulation. Adams's interpretation of the Federal Acquisition Regulation also finds no support in the Small Business Act, from which the "fair proportion" language originated:

> To effectuate the purposes of this chapter, small-business concerns within the meaning of this chapter shall receive any award or contract or any part thereof . . . as to which it is determined by the Administration and the contracting procurement or disposal agency . . . to be in the interest of assuring that a *fair proportion* of the total purchases and contracts for property and services for the Government in each industry category are placed with small business concerns. . . . These determinations may be made for individual awards or contracts or for classes of awards or contracts.

15 U.S.C. § 644(a) (emphasis added). The "fair proportion" determination is to be made "by the Administration and the contracting procurement *or* disposal agency" and "may be made for individual awards *or* contracts *or* for classes of awards or contracts." *Id.* (emphases added). The plain language of the statute repudiates Adams's suggestion that the "fair proportion" determination is part

of a two-part process executed by a contracting officer. There is no indication in the Small Business Act that the "fair proportion" determination must be made on a contract-specific basis.

Here, the DOL conducted market research to assess the interest among small businesses in bidding on the contracts, applied the appropriate NAICS size standard, and received the endorsement of the Office of Small and Disadvantaged Business Utilization as part of its "fair proportion" determination. The Court of Federal Claims correctly concluded that the DOL had satisfied the "fair proportion" determination. *Adams I*, 109 Fed. Cl. at 355 ("The mechanisms contemplated by [15 U.S.C. §] 644—goal setting by the Executive Branch, input from the [Office of Small and Disadvantaged Business Utilization], and the industry specific application of size standards by [the Office of Management and Budget] and the [Small Business Administration]—were implemented. . . . [N]othing more was required to satisfy the 'fair proportion' requirement."). It was then left to the Contracting Officer to perform the Rule of Two analysis based on the results of the RFIs.

Notably, Adams has not articulated a means by which an individual contracting officer would make a "fair proportion" determination in the context of a specific procurement. While Adams is correct that the DOL must make a "fair proportion" determination prior to designating a contract as a small business set-aside, the method it proposes for doing so is without support. The DOL properly employed a method that comports with the Small Business Act; therefore, its decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and must be sustained. 5 U.S.C. § 706(2)(A).

## V. The DOL Properly Applied the Rule of Two Analysis

Finally, Adams argues that, if it was permissible for the DOL to use the "Rule of Two" framework, the DOL did not apply it correctly to these procurements. As noted, the Rule of Two states that the "contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a *reasonable expectation* that: (1) Offers will be obtained from *at least two responsible small business concerns* . . . ; and (2) Award will be made at *fair market prices*." 48 C.F.R. § 19.502-2(b) (emphases added). To Adams, this Rule "requires two separate, but inter-related, decisions—one as to responsibility, and one as to a form of price reasonableness." Appellant's Br. (*Adams I*) 50; Appellant's Br. (*Adams II*) 45. Adams argues that the DOL eliminated the responsibility and fair market price requirements because the contracting officer did not perform the depth of research Adams contends is required.

Adams's reading of the Rule of Two ignores that "a reasonable expectation" that at least two responsible small businesses will submit bids at fair market prices is all that is required. Here, through the RFI process, the DOL performed market research about the level of interest from small businesses in bidding on the Shriver and Gadsden contracts. It then determined from the responses that there was a reasonable expectation that at least two responsible small businesses would make offers for the operation of each of the Centers.

To Adams, "the issue here is that the market research . . . must generate the information necessary to address the expressly required responsibility and price reasonableness legal elements of the Rule of Two." Appellant's Br. (*Adams I*) 51; Appellant's Br. (*Adams II*) 46. According to Adams, the required information is identified in another part of the Federal Acquisition Regulation pertaining to determining whether a prospective contractor is

"responsible" before awarding a contract to that contractor. These factors include capability, capacity, and past performance. 48 C.F.R. § 9.104-1. Adams contends that only by collecting information related to these factors can the DOL meet the requirements of the Rule of Two.

Adams conflates a set-aside determination with a responsibility determination made pursuant to § 9.104-1; the former determines whether there is a reasonable expectation that at least two responsible small businesses will make an offer at fair market prices, while the latter determines whether an individual contractor is responsible in the context of awarding a contract. As the lower court noted, a set-aside determination requires only that the contracting officer have a reasonable expectation that likely small business offerors will survive a future responsibility determination. The DOL was not required to impose the requirements of the contractor-selection process onto the small business set-aside determination, and it properly applied the Rule of Two. Because its decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, it will not be disturbed. 5 U.S.C. § 706(2)(A).

## CONCLUSION

Accordingly, the Court of Federal Claims' decisions are affirmed.

**AFFIRMED**