# United States Court of Appeals for the Federal Circuit

---

**LUTHER D. SPICER, JR.,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1239

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-4489, Judge Coral Wong Pietsch, Judge Joseph L. Toth, Judge Michael P. Allen.

---

Decided: March 8, 2023

---

RENEE A. BURBANK, National Veterans Legal Services Program, Arlington, VA, argued for claimant-appellant. Also represented by CHRISTOPHER GLENN MURRAY, BARTON FRANK STICHMAN, I, Washington, DC.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, MOLLIE LENORE FINNAN, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; JONATHAN KRISCH, Y. KEN LEE, Office of General Counsel,

United States Department of Veterans Affairs, Washing-
ton, DC.

_____

Before TARANTO, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Luther Spicer, Jr., appeals the decision of the United
States Court of Appeals for Veterans Claims (Veterans
Court) affirming the decision of the Board of Veterans' Ap-
peals (Board) denying him secondary service connection for
a knee disability. Because we disagree with the Veterans
Court's interpretation of 38 U.S.C. § 1110,[1] we vacate and
remand.

## BACKGROUND

Mr. Spicer served in the United States Air Force from
May 1958 to September 1959 and was exposed to hazard-
ous chemicals, including benzene, in aircraft fuel. Years
later, he developed chronic myeloid leukemia, a blood can-
cer. The Department of Veterans Affairs (VA) recognized
the leukemia as service-connected and granted him a 100
percent disability rating. Separately, Mr. Spicer developed
arthritis in both knees, which caused pain and instability
and required him to use a wheelchair. He was scheduled
for knee replacement surgery to address his knee condition.
It is undisputed that his scheduled surgery was canceled
because the medications he took to manage his leukemia
lowered his hematocrit, or red blood cell level, to a level
that precluded surgery. Mr. Spicer was told that his

_____

[1]    Mr. Spicer's service falls outside "a period of war"
so 38 U.S.C. § 1131, and not § 1110, governs. J.A. 3 n.1.
The two statutes are otherwise identical, *see Gilpin v. West,*
155 F.3d 1353, 1356 (Fed. Cir. 1998), and for consistency
with the parties and the decision below, we also focus on
§ 1110.

hematocrit would never rise to a level that would permit surgery because he is expected to stay on his cancer medications for life.

Mr. Spicer sought secondary service connection for his knee disability. The VA regional office denied the claim, finding no link between the knee disability and his service-connected leukemia. Mr. Spicer appealed to the Board, which affirmed the denial. J.A. 31–36. The Board explained that Mr. Spicer's "inability to undergo knee replacement surgery because of the effects of his service-connected leukemia is not contemplated by the applicable laws or regulations to fall within the meaning of secondary service connection." J.A. 33. Mr. Spicer appealed to the Veterans Court.

Before the Veterans Court, Mr. Spicer argued that, notwithstanding any regulation, 38 U.S.C. § 1110 establishes entitlement to service connection in his circumstances. *Spicer v. McDonough*, 34 Vet. App. 310, 313 (2021). Section 1110 provides compensation for veterans "[f]or disability resulting from personal injury suffered or disease contracted in line of duty." Mr. Spicer argued that § 1110 only requires a worsening of functionality—whether through an inability to treat or a more direct, etiological cause. A divided panel disagreed and affirmed the Board's denial. *Spicer*, 34 Vet. App. at 313.

The majority analyzed whether the language "disability resulting from" in § 1110 applied to disabilities "that include the natural progression of a condition not actually caused or aggravated by a service-connected disability[,] but that nonetheless might have been less severe were it not for such disability." *Id.* at 316. The majority determined that it did not. *Id.*

The majority first determined that the plain meaning of the phrase "resulting from" requires but-for causation. It reasoned that § 1110 therefore includes an etiological component, requiring that the veteran's service be "the

cause(s) or origin of a disease." *Id.* at 317 (quoting *Allen v. Brown*, 7 Vet. App. 439, 445 (1995)). Although it acknowledged that causation permits a multi-link causal chain, the majority held that Mr. Spicer's knee condition did not result from his service-connected cancer. The majority reasoned that "[u]nless we can say that the current state of his arthritis would not exist in the absence of his cancer or chemotherapy," there is "no actual but-for causation." *Id.* at 318. In the majority's view, Mr. Spicer's interpretation would require the VA to resort to "conjecture or speculation" to assess the difference between the current state of his knees and his knees post-surgery. *Id.* In addition, the majority opined that, contrary to longstanding practice, Mr. Spicer's interpretation would compensate for the natural progression of disabilities that arose independently of service. *Id.* at 318–19.

Judge Allen dissented. He agreed that the key language is "disability resulting from," but interpreted that language as requiring a much broader, causation-based standard. *Id.* at 321–22. He relied on similar caselaw as the majority, such as *Murakami v. United States*, 398 F.3d 1342, 1351–52 (Fed. Cir. 2005), where we held that "as a result of" requires showing "a consequence or effect." (relying on *Webster's Third New Int'l Dictionary* 1937 (1993)). But he determined that such causation "merely requires that one thing flow from another," especially given Congress's use of the broad language "resulting from" without any limitations. *Spicer*, 34 Vet. App.at 323. The dissent reasoned that Congress could have listed other requirements for establishing service connection in § 1110, such as an etiological cause, but it did not do so. As for the majority's concerns about the speculative nature of assessing Mr. Spicer's level of knee impairment due to his inability to have surgery, Judge Allen noted that secondary service connection already requires complex causation analyses and that VA adjudicators address similarly complex issues every day. As for the majority's concerns about

compensation for the progression of a disability that arose independent of service, the dissent noted the Supreme Court's warning against relying on policy considerations when the law is clear. *Id.* at 327–28 (citing *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1542 (2021)).

Mr. Spicer appeals. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

### I

Mr. Spicer challenges the Veterans Court's interpretation of 38 U.S.C. § 1110. We review the Veterans Court's interpretation of statutes de novo. *See* 38 U.S.C. § 7292(c); *Breland v. McDonough*, 22 F.4th 1347, 1350 (Fed. Cir. 2022).

Section 1110 provides that the United States will pay a veteran "[f]or disability resulting from personal injury suffered or disease contracted in line of duty." The parties agree, and our caselaw provides, that "disability" in § 1110 refers to a veteran's present-day "functional impairment." *Saunders v. Wilkie*, 886 F.3d 1356, 1362–63 (Fed. Cir. 2018) (defining "disability" in § 1110 as a "functional impairment"); *see* Oral Arg. at 21:28–21:50, 28:22–30:10, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1239_01102023.mp3.Thus, Mr. Spicer's claim is that his current functional knee impairment is resulting from his leukemia contracted in the line of duty.

The parties also agree that the language "resulting from" in § 1110 requires but-for causation. Appellee's Br. 12; Oral Arg. at 0:10–0:22. The parties further agree that but-for causation is a broad standard of causation, or at least broader than proximate causation, and encompasses multi-link causal chains. Appellant's Br. 9; Appellee's Br. 18–19 & 19 n.6. The parties' agreement follows Supreme Court precedent, which recognizes that

(i) Congress legislates knowing that the phrase "resulting from" means but-for causation, (ii) there can be multiple causes of a harm, and (iii) "but-for" liability based on a particular cause simply means that but for the cause, the result would not have occurred. *Burrage v. United States*, 571 U.S. 204, 211–12 (2014).

The dispute is thus narrow: Whether the but-for causation requirement in § 1110 is limited, as the government contends, to bringing something about or the onset or etiological link, or whether, as Mr. Spicer contends, that language may encompass situations where the service-connected disease or injury impedes treatment of a disability. For the reasons below, we adopt the latter view.

## II

Our analysis begins and ends with the statutory text. *See Res-Care, Inc. v. United States*, 735 F.3d 1384, 1388 (Fed. Cir. 2013). Only where there is "interpretive doubt," after using ordinary textual analysis tools, do we rely on the pro-veteran canon for guidance. *Kisor v. McDonough*, 995 F.3d 1316, 1325 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 756 (2022). If the intent of Congress is clear from the statutory language, that is the end of our inquiry. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

Section 1110 provides:

For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, air, or space service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was

aggravated, compensation as provided in this sub-chapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

We focus on the first clause: "For disability resulting from personal injury suffered or disease contracted in line of duty." The initial phrase, "[f]or disability," means present-day functional impairment. *See Saunders*, 886 F.3d at 1362–63. We have recognized that the word "disability" refers to a "functional impairment, rather than the underlying cause of the impairment," *id.*, a definition the parties do not dispute, Oral Arg. at 29:02–29:40. In other words, the statute refers only to the disability itself—not its cause—and thus an interpretation of the statute that requires a veteran's service to be the onset or etiological link of a disability would not be derived from this statutory language.

Next, we turn to the key language in this case: "resulting from." This phrase has no qualifiers or exceptions. No textual or contextual indication dictates a narrower interpretation of "resulting from" than but-for causality. *See Burrage*, 571 U.S. at 212. The but-for causation standard is not limited to a single cause and effect, but rather contemplates multi-causal links, including action and inaction (e.g., the failure to shovel snow can be a but-for cause of someone falling). *See id.* at 211 (explaining how poison can be a but-for cause of death even if other diseases contribute to the death); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020) (describing the failure to signal a turn at an intersection as a but-for cause of a collision). Stated otherwise, but-for causation is broad, undisputedly broader than proximate cause. *See* Appellee's Br. 19 n.6; *see also Bostock*, 140 S. Ct. at 1739 (characterizing but-for causation as "a sweeping standard"). In drafting § 1110, Congress specifically invoked but-for causation and did not indicate that it meant anything else.

Congress could have limited the § 1110 causation standard. Indeed, Congress drafted a narrower statute using qualifiers in § 1153. There, Congress excluded compensation for the aggravation of "preexisting injury or disease" when the increase in disability is due to the "natural progress of the disease." 38 U.S.C. § 1153. Congress did not similarly limit or qualify the text of § 1110. We must give meaning to this difference. *See Res-Care*, 735 F.3d at 1389 (stating the cardinal rule of statutory interpretation that Congress's use of different terms within related statutes generally implies that Congress intended different meanings); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."). Thus, the causation standard of § 1110 is simply standard but-for causation.

Put together, § 1110 plainly requires compensation when a service-connected disease or injury is a but-for cause of a present-day disability. This broad language applies to the natural progression of a condition not caused by a service-connected injury or disease, but that nonetheless would have been less severe were it not for the service-connected disability. Stated another way, § 1110 provides for compensation for a worsening of functionality—whether through an inability to treat or a more direct, etiological cause. Nothing in the statute limits § 1110 to onset or etiological causes of a worsening in functionality.

The government's main argument against this interpretation focuses on the second clause of § 1110: "aggravation of a preexisting injury suffered or disease contracted in line of duty." *See* Appellee's Br. 27–28. Specifically, the government contends that Congress in § 1110 distinguished disabilities whose onset resulted from service from disabilities that were aggravated by service and did not allow compensation for the latter. *See id.*; Oral Arg. at 22:46–24:09. Specifically, the government argues that Congress's choice of the words in the second clause of

§ 1110 ("aggravation of a preexisting injury") means that any aggravation (even of a non-preexisting injury or disease) must be different than what is addressed in the first clause.[2]

We do not adopt the government's view. The second clause of the statute narrowly addresses "aggravation of a preexisting injury." In other words, that clause addresses preexisting conditions, not all the diseases and injuries that § 1110 addresses. Absent some other language in the statute, this phrase cannot be fairly read to exclude *all* aggravation from the first clause of § 1110, including aggravation of post-service conditions. *See Bates*, 522 U.S. at 29–30 ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up).

Although our interpretation rests fully on the statutory text, we note that our interpretation is also consistent with the VA's treatment of "secondary conditions." The VA does not require a direct causation standard when addressing such conditions. For example, in *Wanner v. Principi*, 17 Vet. App. 4, 8 (2003), *rev'd and remanded on other grounds*, 370 F.3d 1124 (Fed. Cir. 2004), the VA awarded compensation for a disability caused by the medication used to treat a veteran's service-connected condition. There, the veteran developed tuberculosis during service. *Id.* The medication the veteran took to treat tuberculosis caused tinnitus, and the Board awarded service connection for his tinnitus. *Id.* at 8–9. Likewise, in *Payne v. Wilkie*, 31 Vet. App. 373

---

[2]    In sum, the government tries to import 38 U.S.C. § 1153's stricter language for "aggravat[ion]" of "[a] preexisting injury or disease" to all the disabilities § 1110 contemplates, which includes post-service injuries or disabilities.

(2019), the VA recognized that causation could include multiple steps in the causal chain. Accordingly, the VA accepted the theory that service-connected upper extremity disabilities caused obesity, which in turn caused other non-service-connected disabilities, which in turn caused loss of a creative organ. *Id.* at 383–85 (interpreting 38 U.S.C. § 1114(k), which provides compensation when, "as the result of" a service-connected disability, a veteran suffers the loss of a creative organ). And the VA also awards compensation for a disability where a service-connected disability prevents exercise, which leads to obesity, which leads to another disability, like hypertension. Memorandum from Acting Gen. Couns. to Exec. in Charge, Bd. of Veterans' Appeals, VAOPGCPREC 1-2017 (Jan. 6, 2017), at 9–10, http://www.va.gov/OGC/docs/2017/VAOPGCPREC1- 2017. pdf.

As for the government's concerns that the VA cannot "measure, evaluate, or appropriately compensate Mr. Spicer's knee functionality" in a but-for world because the assessment is too speculative, Appellee's Br. 30, we are not persuaded. Describing a but-for world necessarily requires imagining that which did not occur. *See, e.g.*, *Mital Steel Point Lisas Ltd. v. United States*, 542 F.3d 867, 876 (Fed. Cir. 2008) ("But for causation is a hypothetical construct.") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989)). Put differently, some speculation is naturally baked into but-for causation. Agencies and tribunals tasked with determining causation—like the VA—are familiar with this kind of analysis.

To illustrate, under 38 U.S.C. § 1151, the VA assesses what would have happened but for medical negligence. As the Secretary has explained, this analysis includes consideration of whether a physician's negligence caused the natural progression of a disease by failing to prevent such natural progress from occurring. *See* Additional Disability or Death Due to Hospital Care, Medical or Surgical Treatment, Examination, Training and Rehabilitation Services,

or Compensated Work Therapy Program, 69 Fed. Reg. 46,426 (Aug. 3, 2004). This could encompass, for example, the failure to perform a corrective surgery. *Id.* at 46,428. The VA also assesses the ameliorative effect of a medication for purposes of determining certain ratings. *See* Oral Arg. at 9:30–10:04; *see, e.g.*, *Jones v. Shinseki*, 26 Vet. App. 56, 62–63 (2012); *McCarroll v. McDonald*, 28 Vet. App. 267, 273 (2016). In other words, the VA regularly evaluates how medical intervention affects or would have affected a veteran's disability. And under 38 U.S.C. § 1153, the VA assesses the delta between a condition's worsening due to active service versus the natural progression of that condition. Here, for example, Mr. Spicer seeks an assessment of the delta between his current condition and what it would have been post corrective knee surgery. Oral Arg. at 7:39–8:08. Such an assessment would seem within the VA's capabilities, especially given the VA's everyday use of medical opinions to guide its factfinding. In any event, § 1110 is clear, and we will not second guess Congress's choice of words based on such policy considerations. *BP P.L.C.*, 141 S. Ct. at 1542.

We decide this case based on our interpretation of § 1110 alone. To the extent that the VA also applied 38 C.F.R. § 3.310(b) to reject Mr. Spicer's theory of compensation, that regulation is unlawful as inconsistent with 38 U.S.C. § 1110.

## CONCLUSION

We have considered the government's remaining arguments and find them unpersuasive. For the reasons above, we vacate the Veterans Court's decision and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**

## COSTS

Costs to Appellant.