NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MOHD N. REFAEI,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1399

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01052-MBH, Judge Marian Blank Horn.

---

Decided: February 23, 2018

---

MICHAEL TIMOTHY MILLIGAN, Law Office of Mike Milligan, El Paso, TX, argued for plaintiff-appellant.

SEAN SIEKKINEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM, JESSICA COLE.

---

Before REYNA, TARANTO, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Dr. Mohd N. Refaei was terminated from his position as a medical resident at William Beaumont Army Medical Center (WBAMC).  He sued the United States (Government) in the U.S. Court of Federal Claims (Claims Court), alleging that WBAMC violated due process protections guaranteed by contract during the proceedings that led to his termination.  The Government moved to dismiss for lack of subject matter jurisdiction, arguing, *inter alia*, that Dr. Refaei was precluded from suing for breach of contract because he served as a medical resident by appointment rather than by contract.  The Claims Court granted the Government's motion to dismiss, finding that Dr. Refaei's employment "was by appointment and not be contract."  *Refaei v. United States*, 129 Fed. Cl. 1, 16 (2016).  Throughout the proceedings, and in earlier proceedings related to the same events, Dr. Refaei characterized his residency at WBAMC as simply one of employment by the Government.  Accepting that understanding for purposes of decision, we affirm the Claims Court's dismissal.

BACKGROUND

On July 1, 2008, Dr. Refaei was appointed by the Department of Veterans Affairs (VA) to a position as a medical resident in the Internal Medicine Residency Program at WBAMC pursuant to 38 U.S.C. § 7406.  [J.A. 97]  Section 7406 grants the Secretary of the VA authority to "appoint qualified persons" to "residencies."  38 U.S.C. § 7406(a)(1).  The Secretary also has authority to "prescribe the conditions of employment of persons appointed under [§ 7406], including necessary training, and the customary amount and terms of pay for such positions."  38 U.S.C. § 7406(b).  The Standard Form (SF-50) memorializing Dr. Refaei's appointment notes that his appointment was for the duration of his training unless sooner

terminated and that his employment would be subject to periodic review.  [J.A. 97]  The SF-50 also reflects that Dr. Refaei signed an appointment affidavit the same day.

That appointment followed a February 13, 2008 letter to Dr. Refaei from Dr. Kent J. DeZee, Program Director for WBAMC's Internal Medicine Residency Program.  In that letter, Dr. DeZee "officially offer[ed Dr. Refeai] a position in [the] Internal Medicine residency training program beginning July 1st 2008."  J.A. 435.  The letter stated that the offer was "contingent upon," among other things, Dr. Refaei's "ability to fulfill all requirements for Veteran's Administration employment."  *Id.*  Those requirements having evidently been met, the VA made the employment appointment on July 1, 2008, the date of the SF-50 appointment document.

A second document central to the issue now before us is dated the same day: "WILLIAM BEAUMONT ARMY MEDICAL CENTER RESIDENT AGREEMENT GRADUATE MEDICAL EDUCATION" (Resident Agreement).  J.A. 91–96.  Dr. Refaei signed it on July 9, 2008.  Dr. DeZee, as Internal Medicine Program Director, signed it on August 2, 2008.  [J.A. 96]

It is important to note what is not at issue about the Resident Agreement in this case.  Dr. Refaei does not present to us an argument, based on the Resident Agreement and the SF-50 appointment, that he had two distinct but related relationships with the United States: an education agreement with an Army medical center (WBAMC), which controlled admission into and retention in the residency as a "graduate medical education" program (from which WBAMC eventually removed him); and an employment appointment from the VA, contingent on Dr. Refaei's participation in the residency program, such participation subject to the Army's, not the VA's, control.  Dr. Refaei has consistently treated his relationship with WBAMC as simply one of employment, with the Army

functioning "as the residents' employer," and the VA paying the salaries, as his complaint in this case states. J.A. 35–36.[1] Like the Claims Court, we will therefore decide this case based on Dr. Refaei's own treatment of the Resident Agreement as an employment agreement.

The Resident Agreement includes a clause that, according to Dr. Refaei, incorporates WBAMC's due process policy (Due Process Policy) by reference into the Resident Agreement. [*Id.*; *see also* Due Process Policy (J.A. 45–62)] The clause reads as follows in its entirety: "8. Guarantee of Fair Procedures: See your Due Process document for *guidance.*" J.A. 96 (emphasis added). Dr. Refaei separately signed a copy of the Due Process Policy to acknowledge receipt of it. [J.A. 62]

WBAMC initiated proceedings to terminate Dr. Refaei in August 2011, shortly before he was scheduled to complete his residency. [J.A. 36] According to Dr. Refaei, WBAMC provided only one reason for his termination in the notice sent to him prior to his termination hearing: that he improperly transferred a patient to the Intensive Care Unit instead of leaving the patient in a particular hospital ward. [J.A. 36–37] Dr. Refaei asserts that such a discretionary decision regarding patient care is not listed as a ground for termination in the Due Process Policy. [J.A. 37]

WBAMC's Graduate Medical Education Committee conducted Dr. Refaei's termination hearing. [*See* J.A. 37,

---

[1] Indeed, Dr, Refaei proceeded on the same characterization in the *employment* discrimination claims he brought against the Army in the proceeding that became this case when (after those claims were rejected on the merits) the remaining contract claim was transferred to the Claims Court. *See infra*, p. 5.

39–40] After the hearing, the Committee recommended that Dr. Refaei be terminated. [J.A. 37–40] Dr. Refaei asserts that he was not permitted to review new evidence and allegations presented for the first time at the hearing and alleges that these new allegations were used to terminate him. [*Id.*] He appealed to the Commanding General, who denied the appeal and terminated Dr. Refaei effective September 26, 2011. [J.A. 40] As noted, Dr. Refaei treats this as a termination of employment, not as a termination only of participation in an educational residency program.

Dr. Refaei subsequently filed a complaint in the United States District Court for the Western District of Texas, alleging that the Army breached a contract by violating the Due Process Policy during his termination hearing. [J.A. 40] Compl., No. 3:13-CV-196-FM (W.D. Tex. June 18, 2013), ECF No. 1. Dr. Refaei also asserted various claims of employment discrimination and claims for intentional infliction of emotional distress and defamation. *Id.* He named only the Secretary of the Department of the Army as a defendant and consistently identified the Army as his employer throughout his district court complaint. *Id.* The district court granted the Government's partial motion to dismiss Dr. Refaei's breach of contract claim and granted the Government's motion for summary judgment on all remaining issues. *See Refaei v. McHugh*, EP-13-CA-00196-FM, 2014 WL 11516372 (W.D. Tex. Aug. 20, 2014). Dr. Refaei appealed to the Fifth Circuit, which affirmed the rejection of the employment discrimination claims but vacated the dismissal of Dr. Refaei's breach of contract claim. It remanded the case to the district court with instructions to transfer the contract claim to the Claims Court because, "[u]nder the Tucker Act, the [Claims Court] has exclusive jurisdiction over claims sounding in breach of contract against the United States that exceed $10,000." *Refaei v. McHugh*, 624 F. App'x 142, 148–49 (5th Cir. 2015).

On August 4, 2015, Dr. Refaei filed a transfer complaint in the Claims Court alleging, *inter alia*, that the Resident Agreement, which incorporated the Due Process Policy, constituted an express or implied contract that was breached by the Army. [J.A. 35–43] In the complaint, Dr. Refaei asserts that WBAMC, in order to maintain accreditation with the Accreditation Council for Graduate Medical Education (ACGME), adopted its Due Process Policy in accordance with institutional requirements set by ACGME. [J.A. 36] For his breach of contract claim, Dr. Refaei alleges that the Due Process Policy "constitutes an express or alternatively implied contract that Plaintiff would have the benefit of at least the minimum due process requirements mandated by ACGME," and that "WBAMC breached that contract by its multiple violations of policies, causing Plaintiff monetary damages."

The Government filed a motion to dismiss on February 19, 2016, asserting that Dr. Refaei's complaint should be dismissed for lack of subject matter jurisdiction. [*See* J.A. 63–88] In support of the motion, the Government argued, *inter alia*, that (1) Dr. Refaei served as a medical resident pursuant to an appointment rather than by contract, (2) his alleged contract was not money-mandating, and (3) Dr. Refaei failed to allege that Dr. DeZee had authority to bind the Government by signing the Resident Agreement. [*Id.*] Dr. Refaei responded by arguing that (1) Dr. Refaei had a contract that was ancillary to his employment appointment, (2) the contract incorporated the Due Process Policy by reference, and (3) the contract was breached when the Government failed to provide Dr. Refaei the protections guaranteed in the Due Process Policy. [*See* Claims Court Case No. 15-cv-1052 Dkt. No. 10 at 10 (not in the J.A.)] Dr. Refaei also requested—in his response brief addressing the motion to dismiss—that he be permitted to engage in discovery on

certain topics and for leave to amend, if any portion of the motion to dismiss were granted. [J.A. 410–11]

The Claims Court granted the Government's motion to dismiss, concluding that Dr. Refaei had failed to rebut the presumption that, as a federal employee, he was employed only by appointment and not (also) by contract. *Refaei*, 129 Fed. Cl. at 16. The Claims Court rejected Dr. Refaei's argument that he had entered into a contractual relationship with the Government that was separate from his "appointment-based" employment relationship. *Id.* at 15–16. Because Dr. Refaei's employment at WBAMC was by appointment and not by contract, the Claims Court held that his claim for breach of contract "fail[ed] for lack of jurisdiction." *Id.* at 16. The Claims Court did not address the requests for discovery and leave to amend in Dr. Refaei's response brief.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARDS OF REVIEW

We review the Claims Court's legal conclusion that it lacked subject matter jurisdiction de novo. *See Coast Prof'l, Inc. v. United States*, 828 F.3d 1349, 1354 (Fed. Cir. 2016). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, when a motion to dismiss challenges the truth of jurisdictional facts, "[w]e review determinations of the Court of Federal Claims regarding jurisdictional facts for clear error." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003).

We review the Claims Court's denial of a request for jurisdictional discovery and denial of a motion for leave to amend for abuse of discretion. *Rick's Mushrooms Serv.,*

*Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008); *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1379 (Fed. Cir. 2007). "An abuse of discretion occurs when a court misunderstands or misapplies the relevant law or makes clearly erroneous findings of fact." *Renda Marine*, 509 F.3d at 1379.

DISCUSSION

I. Jurisdiction

The Tucker Act gives the Claims Court jurisdiction over, *inter alia*, claims against the United States founded upon an "express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). "The Tucker Act does not create substantive rights. Rather, it is a jurisdictional provision 'that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'" *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 291 (2009)). The sole basis for jurisdiction pressed by Dr. Refaei on appeal is that he had an "express or implied contract with the United States." [*See generally* Open. Br.] The dispositive inquiry in this case is whether there was an employment contract between Dr. Refaei and the Government enforceable under the Tucker Act.

The question of whether a Government employee serves by appointment or by contract turns upon an analysis of the statutes and regulations governing the employment of the plaintiff and whatever evidence is adduced as to a plaintiff's particular status. *United States v. Hopkins*, 427 U.S. 123, 130 (1976). We have stated that there is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). In

*Kania v. United States*, we observed, in *dicta*, that "[a] contract between government and one of its employees is possible, but it must be specifically spelled out as a contract." 650 F.2d 264, 268 (Ct. Cl. 1981). However, "[t]he contract must be made by a person having authority." *Id.*

Dr. Refaei admits that he served by appointment. *See, e.g.*, Open. Br. 3. The question, therefore, is whether he also had an employment contract enforceable under the Tucker Act. It is Dr. Refaei's burden to establish that the Resident Agreement was such a contract. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). We have not previously found an appointment-supplementing, enforceable employment contract. The decisions in *Chu* and *Kania* make clear, at a minimum, the strength of the presumption that federal employment is by appointment only, not also by contract. Moreover, the Supreme Court recognized in *United States v. Fausto* that Congress, in the Civil Service Reform Act, broadly (if not completely) displaced Tucker Act remedies for challenges to federal employment decisions. 484 U.S. 439, 454 (1988). We conclude that, if an appointment-supplementing, enforceable federal contract could ever be found (an issue we need not decide), Dr. Refaei has not shown one here.

The only statutory basis of employment identified by Dr. Refaei is limited to VA appointment. The statute authorizing the VA to establish residency programs and to appoint qualified persons thereto provides that the Secretary "may prescribe the conditions of employment of persons appointed . . . including necessary training" and that medical schools and other hospitals may participate in the training of residents. 38 U.S.C. § 7406(b)–(c). Dr. Refaei cites no authority for Dr. DeZee, WBAMC, or the Army to enter into a supplemental employment agreement governing the residency.

Moreover, WBAMC's letter offering Dr. Refaei a residency position expressly referred to his employment being governed by the VA, not WBAMC. J.A. 435. And the Resident Agreement itself points against, not toward, Army authority to establish enforceable employment terms. It recognizes that WBAMC's training programs "acquire residents through several different sources" referred to in the Resident Agreement as "Fiscal Agencies." J.A. 92. These Fiscal Agencies, according to the Resident Agreement, "provide the financial support and specific benefits for their respective group[s] of residents" and have their "own set[s] of formal policies" specific to employment at the respective Fiscal Agencies. *Id.* The Resident Agreement states that it merely "highlights the various benefits provided to the residents" and "cannot super[s]ede the specific policies of each agency." *Id.*

In view of the foregoing, we agree with the Claims Court's conclusion that Dr. Refaei failed to establish the existence of Tucker Act contract jurisdiction.[2]

## II. Requests for Discovery and Leave to Amend

Dr. Refaei argues that the Claims Court abused its discretion by implicitly denying (by not addressing) his requests for leave to amend and for discovery. [Open. Br. 30–32] The Government responds that "[n]umerous circuit courts have held that a trial court does not abuse its discretion by failing to address a request to amend a complaint that is merely incorporated into a response to a motion to dismiss," Resp. Br. 21 (citing cases), and that Dr. Refaei did not explain with sufficient specificity how

---

[2]    Because we decide that Dr. Refaei served by appointment and not by contract, we need not evaluate whether Dr. Refaei has shown the Residency Agreement is money-mandating under the Tucker Act.

discovery would help him prove jurisdiction, *id.* at 23. We agree with the Government.

Dr. Refaei's request for leave to amend did not specifically identify any new facts or arguments that would overcome his failure to show the existence of an enforceable employment contract. Therefore, any proposed amended complaint would have been futile. Moreover, we agree with the Government that the Claims Court did not abuse its discretion by failing to address Dr. Refaei's request, because it was merely incorporated into a response to a motion to dismiss. *See, e.g.*, *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading.")

Similarly, Dr. Refaei's requested discovery would not have cured his failures of jurisdictional proof. Dr. Refaei requested discovery on the relationship between WBAMC, the Army, and ACGME in relation to the development of due process requirements and WBAMC's accreditation by ACGME. J.A. 411. He also requested a copy of his employee handbook and certain pages from "WBAMC's Graduate Medical Education Handbook." *Id.* However, Dr. Refaei did not explain how or why any of this information could be used to cure his failures of proof. Thus, the Claims Court did not abuse its discretion in denying his informal request for discovery.

CONCLUSION

For the foregoing reasons, the Claims Court's decision granting the Government's motion to dismiss for lack of subject matter jurisdiction is

**AFFIRMED**