# United States Court of Appeals for the Federal Circuit

---

**WILLIS E. BRELAND,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2199

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-5980, Judge Joseph L. Falvey, Jr., Judge William S. Greenberg, Judge Joseph L. Toth.

---

Decided: January 11, 2022

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.; AMANDA BLACKMON, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* STOLL.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

STOLL, *Circuit Judge.*

Willis E. Breland appeals the decision of the United States Court of Appeals for Veterans Claims affirming the decision by the Board of Veterans' Appeals denying his request for a 100% disability rating for tongue cancer under 38 C.F.R. § 4.114, Diagnostic Code 7343 for two periods of time—totaling nearly ten years—in which he did not have cancer. Because we agree with the Veterans Court's interpretation of the regulation, we affirm.

## BACKGROUND

### I

Mr. Breland is a United States Army veteran who served on active duty in Vietnam from 1965 to 1968. During active duty, Mr. Breland was exposed to Agent Orange, a tactical herbicide that was used by the United States throughout its involvement in the Vietnam War. In October 2006, Mr. Breland was diagnosed with squamous cell carcinoma of the tongue and subsequently underwent chemotherapy and radiation therapy. Mr. Breland completed his cancer treatment by January 2007.

In December 2006, a month before completing treatment, Mr. Breland filed a claim for service connection for tongue cancer with the Montgomery, Alabama Regional Office of the Department of Veterans Affairs (VA). In December 2007, the Regional Office denied Mr. Breland's claim because tongue cancer was not one of the eleven disabilities the VA had determined were entitled to a presumptive service connection based on exposure to herbicides used in Vietnam and because he had not otherwise proven service connection.

A month later, a January 2008 biopsy revealed recurrence of Mr. Breland's tongue cancer.  Mr. Breland underwent surgery in February 2008 to remove the affected portions of his tongue.  His medical records dated July 2008, five months after treatment, showed no evidence of malignancy.

In December 2008, Mr. Breland filed a Notice of Disagreement (NOD) with the Regional Office.  In May 2010, Mr. Breland underwent a VA examination.  The VA examiner noted Mr. Breland's complaint of continuing dry mouth, diagnosed no recurrence of Mr. Breland's tongue cancer, and concluded that the condition was "less likely related" to herbicide exposure.  J.A. 2.  Once again, in August 2010, the Regional Office denied Mr. Breland's claim for compensation based on his tongue cancer.  Mr. Breland's private medical records dated 2009 and 2012 through 2015 continued to indicate that there was no local recurrence or metastasis of tongue cancer.  J.A. 88–89.

In September 2015, Mr. Breland submitted new evidence to the Regional Office in the form of a medical opinion tying his tongue cancer to Agent Orange exposure.  It was at this point that the Regional Office retroactively granted service connection for Mr. Breland's tongue cancer.  The Regional Office assigned Mr. Breland a staged[1] 100% disability rating under 38 C.F.R. § 4.114, Diagnostic Code 7343, based on his "active malignancy [cancer] and treatment period."  J.A. 3, 58–68.  The 100% rating was effective for an eight-month period running from December 26, 2006, when Mr. Breland first applied for benefits,

---

[1]    Separate disability ratings can be assigned for separate periods of time.  These ratings, assigned retroactively based on facts available for the periods of time in question, are known as staged ratings.  Staged ratings provide flexibility in accounting for a veteran's condition while their claim is adjudicated.

to August 1, 2007, six months after the conclusion of treatment, as specified in § 4.114, Diagnostic Code 7343. The Regional Office also assigned Mr. Breland a noncompensable rating (based on Mr. Breland's inactive disease) effective from August 1, 2007, onward. The Regional Office's rating decision also noted that higher ratings may be warranted based on residual conditions related to Mr. Breland's tongue cancer.

About a year later, in August 2016, Mr. Breland filed a NOD with the Regional Office as to the assigned noncompensable rating, noting that he had experienced residual conditions related to treatment for his tongue cancer. In September 2017, Mr. Breland underwent a second VA examination regarding these residual conditions. The VA examination did not document any recurrence or metastasis of Mr. Breland's tongue cancer. J.A. 89. Thereafter, the Regional Office granted service connection for certain residual conditions and, in February 2018, the Regional Office assigned an effective date of August 5, 2016 for a subset of the residual conditions' ratings. At this time, the Regional Office also determined that a 100% disability rating for Mr. Breland's tongue cancer was warranted retroactively for an additional eight-month period starting January 16, 2008, when it was documented that Mr. Breland's tongue cancer had returned, to September 1, 2008, a little over six months after Mr. Breland underwent surgery in February 2008 to remove portions of his tongue, i.e., six months following treatment.

In total, the Regional Office assigned Mr. Breland two 100% disability ratings culminating in nearly 16 months of 100% disability, spanning the periods of time during which Mr. Breland's medical records established he had active tongue cancer and for an additional six-month period following treatment. He also received partial disability ratings based on his residual conditions for the periods of time during which he was not assigned a 100% disability rating

for his active tongue cancer and corresponding treatment period.

## II

Mr. Breland appealed the Regional Office's assignment of a noncompensable rating as of August 1, 2007, to the Board of Veterans' Appeals. Before the Board, Mr. Breland asserted that the VA failed to correctly apply § 4.114, Diagnostic Code 7343, because the VA did not conduct a "mandatory VA examination" six months after discontinuance of his cancer treatment to determine "the appropriate disability rating" at that time. J.A. 87.

The Board rejected Mr. Breland's claim. The Board explained that Mr. Breland's argument focused on his "repeated disagreement with the noncompensable ratings," in which he "assert[ed] that the appropriate rating is 100 percent from the date of service connection" until the present due to the Regional Office incorrectly applying Diagnostic Code 7343 "because noncompensable ratings were assigned . . . without the administration of the mandatory VA examination." J.A. 87. The Board explained that because both of the 100% ratings "were assigned retroactively," performing the VA examinations at "the conclusion of the pertinent 6-month periods following cessation of treatment could not have been accomplished." J.A. 87–88. Instead, the Board pointed out that § 4.114 instructed that "if there has been no local recurrence or metastasis, the condition is to be rated on its residuals," and that rating the condition on the residuals was therefore appropriate in Mr. Breland's case. J.A. 87–88.

The Board therefore denied Mr. Breland's claim requesting a 100% rating for the periods spanning from August 1, 2007, to January 16, 2008, and September 1, 2008, onward, the time periods for which Mr. Breland had been assigned only partial disability ratings for a subset of his residual conditions. The Board also determined that the proper effective date for the subset of residual conditions

was August 1, 2007, the date on which Mr. Breland's first period of 100% disability ended.

The Veterans Court affirmed the Board's decision. *Breland v. Wilkie*, 32 Vet. App. 360, 372 (2020). In doing so, the Veterans Court interpreted the note to § 4.114, Diagnostic Code 7343 as plainly "contemplat[ing] prospective action and therefore . . . inapplicable when VA awards benefits retroactively." *Id.* at 368. In Mr. Breland's case, "service connection and ratings for tongue cancer [were] retroactively assigned years after the cancer ha[d] been eradicated and treatment ha[d] ceased." *Id.* at 366. The Veterans Court explained that the VA had "a clear picture of Mr. Breland's health and could assign ratings and effective dates based on actual medical findings," *id.* at 371, and that requiring a retroactively assigned 100% rating to continue until a VA examination is conducted would "lead to compensation based on pure regulatory presumption and unmoored from any medical reality," *id.* at 367. The Veterans Court held that a plain reading of the note to Diagnostic Code 7343 "is prospective and thus the prospective procedures—i.e., the examination 6 months after cessation of treatment and contemporaneous notice of any reduction—are not strictly applicable when VA awards service connection and disability ratings retroactively." *Id.* at 371–72. The Veterans Court therefore affirmed the Board's decision denying Mr. Breland a 100% disability rating for service-connected tongue cancer from August 1, 2007, to January 16, 2008, and from September 1, 2008, to September 2017.

Mr. Breland appeals. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

### I

On appeal, Mr. Breland asserts that the Veterans Court misinterpreted the note accompanying § 4.114,

Diagnostic Code 7343 in affirming the Board's decision. This court has exclusive jurisdiction to review all questions of law from the Veterans Court. 38 U.S.C. § 7292. We review questions of law, including the interpretation of statutes and regulations, de novo. *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017).

Mr. Breland contends he is entitled to a 100% rating beginning December 2006, when his claim was first filed, and ending September 2017, when he was finally examined by the VA for his residuals. This time period, spanning over a decade, encompasses nine and a half years during which it is undisputed that Mr. Breland did not have active cancer and for which Mr. Breland has been assigned a partial disability rating for his residual conditions. Mr. Breland's conditions—including his initial tongue cancer, recurrence of tongue cancer, and residuals resulting from tongue cancer—were rated based on private medical records provided by Mr. Breland himself and VA examinations. Mr. Breland does not dispute the validity of any of the medical records in evidence. Mr. Breland's request for relief rests on his interpretation of the note as mandating that the government could not rate his condition below 100% until a mandatory VA examination was conducted "at least" six months after the cessation of treatment.

The government contends that a plain language reading of the note to § 4.114, Diagnostic Code 7343 reveals that its clause referring to the "mandatory VA examination" does not apply to retroactively assigned ratings: "In order for the rating to 'continue,' it must already be in place; when ratings are assigned retroactively, there is nothing to 'continue.'" Appellee's Br. 15. The purpose of retroactively assigned ratings, according to the government, is to put the veteran in the same position he would have been in had the benefits been originally approved as of the earlier date, not to provide a windfall. The government contends that under Mr. Breland's interpretation of the note, he would receive "a decade more of total disability

payments that he would never have obtained had he been rated in tandem with his developing cancer treatment." Appellee's Br. 21.

This appeal thus asks us to consider whether the note to § 4.114, Diagnostic Code 7343 requires the VA to continue a 100% disability rating until it performs a "mandatory VA examination" six months following treatment, even when the disability rating is assigned retroactively after the six-month period has passed. The Veterans Court held that it did not as a matter of law. We agree.

II

We begin and end with the text of the note accompanying § 4.114, Diagnostic Code 7343.[2] Section 4.114 outlines a schedule of diagnostic codes[3] and corresponding disability ratings for ailments relating to the digestive system. Diagnostic Code 7343—titled "Malignant neoplasms of the digestive system, exclusive of skin growths," under which Mr. Breland's tongue cancer was rated—provides for a single rating of 100% disability.

The note accompanying Diagnostic Code 7343 provides that

---

[2]    The dissent asserts the majority is embracing an "atextual interpretation . . . to avoid providing Mr. Breland with those benefits." Dissent at 2. Likewise, the dissent states that the "majority says it adopts this atextual reading so as to avoid overcompensating Mr. Breland." *Id.* We disagree. That the dissent disagrees with our textual interpretation of the note does not make our interpretation atextual or result driven.

[3]    Diagnostic codes are "arbitrary numbers for the purpose of showing the basis of the evaluation assigned and for statistical analysis in the Department of Veterans Affairs." 38 C.F.R. § 4.27.

> [a] rating of 100 percent *shall continue* beyond the cessation of any surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure. *Six months after* discontinuance of such treatment, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local recurrence or metastasis, rate on residuals.

*Id.* (emphases added). The plain language of the note answers the question of whether a 100% rating must continue until a mandatory VA examination six months after treatment when no rating was assigned until well after the six-month time period. It does not. At the outset, the note's initial instruction that a total disability rating "shall continue" demonstrates that the note contemplates circumstances in which there is an existing 100% rating six months after treatment. Likewise, contrary to Mr. Breland's suggestion, the note does not mandate an examination *at least* six months after treatment. Nor does it mandate a "subsequent examination" as suggested by the dissent. Dissent at 6–7. Rather, the note requires a mandatory VA examination "[s]ix months after discontinuance of such treatment." § 4.114, Diagnostic Code 7343, Note. This sentence simply cannot apply to a rating assigned years after this six-month date. A retroactively assigned rating cannot "continue" until a six-month mandatory examination; nor could the examination occur at six months, weighing against Mr. Breland's interpretation. Instead, this language supports the agency's view that the clause referring to the "mandatory VA examination" occurring six months after discontinuance of treatment does not—and, indeed, cannot—apply to retroactively assigned ratings. Simply put, the Veterans Court's interpretation is eminently reasonable because the agency cannot provide a six-month mandatory examination retrospectively.

The second to last sentence of the note cites to 38 C.F.R. § 3.105(e) and provides additional context and support for this interpretation.  Section 3.105(e), titled "Reduction in evaluation – compensation," states in relevant part:

> Where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of *compensation payments currently being made*, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons.

*Id.* (emphasis added).  This reference to "payments *currently* being made" confirms that the changes referred to in the note are changes made to existing ratings, not retroactively assigned ratings.  Section 3.105(e) plainly states that prior to implementing a disability rating reduction that would "result in a reduction or discontinuance of compensation payments currently being made," all material facts and reasons for such a reduction must be laid out.  When a rating is assigned retroactively for a specific duration of time (i.e., the rating is both assigned and reduced retroactively) based on prior medical records that document the veteran's health for that period of time, requiring the proposal of the reduction and the mandatory VA examination prior to the implementation of the reduction in an effort to provide the veteran with the opportunity to oppose such a reduction would make little sense.  A retroactively assigned rating would not be associated with "payments currently being made," and therefore § 3.105(e) confirms that Diagnostic Code 7343 does not apply to ratings that are assigned retroactively.

Furthermore, while not determinative, we note that the purpose of § 3.105(e) is to protect disabled veterans who have come to rely on ongoing benefits from a sudden and arbitrary reduction in those benefits by requiring a

proposal to reduce a rating before any action is taken. These same protections are unnecessary for retroactively assigned ratings because any benefits for past periods of disability are distributed in a lump sum to the veteran; thus, a veteran is unlikely to have become dependent on retroactive benefits and would not experience the surprise that this regulation seeks to avoid. As the Veterans Court correctly stated, "the history and purpose of the regulation reinforce[] [this] reading of the note." *Breland*, 32 Vet. App. at 367.

Mr. Breland argues that the language of the regulation is mandatory and without exceptions, requiring that "six months after discontinuance of such treatment, the appropriate disability rating shall be determined by a *mandatory* VA examination." Appellant's Br. 13. But Mr. Breland's narrow focus on the "mandatory VA examination" language is removed from the context of the note itself and its express incorporation of § 3.105(e). When read as a whole and in the framework of the relevant regulatory scheme, the note is clear that the requirement for a mandatory VA examination applies only to prospective rating changes that may result in reductions to "compensation payments *currently being made*" and not to retroactive assignments of benefits for specific periods.

Thus, in reading the plain language of the note and § 3.105(e) together, we agree with the Veterans Court that the note to § 4.114, Diagnostic Code 7343 unambiguously applies to existing ratings that may later be reduced, not ratings assigned retroactively.[4] Our interpretation today

---

[4] Because we conclude that the language of the regulation unambiguously supports the Veterans Court's interpretation, we need not consider whether deference should be given to the agency's interpretation of the regulation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408, 2421, 2424

is limited to the note to § 4.114, Diagnostic Code 7343. We
do not address the proper interpretation of notes to other
diagnostic codes.

*    *    *

Although it has taken an unreasonable number of
years to accomplish, it is undisputed that the VA consid-
ered the available medical evidence when it assigned
Mr. Breland 100% and then residual ratings. Mr. Breland
was rated 100% for each period of active cancer and treat-
ment and for at least six months following discontinuance
of treatment, as required by the regulation. When the past
medical records indicated that no recurrence or metastasis
was detected, Mr. Breland was rated on his residual condi-
tions, as required by the regulation. Mr. Breland has been,
and continues to be, fairly compensated based on the actual
state of his health. Interpreting the regulation to grant
Mr. Breland the relief he seeks—almost ten years of 100%

_____

(2019). We note, however, that for more than twenty years
the VA has consistently interpreted the language in the
note as not applying to retroactive awards of benefits. For
example, during a notice-and-comment period for a pro-
posed amendment to add an identical note to a different
diagnostic code, the VA addressed a comment regarding
the application of § 3.105(e). The commenter was con-
cerned that applying § 3.105(e) would "cause administra-
tive problems" and "significantly lengthen the period of a
total evaluation when claims are received months or years
after surgery." Schedule for Rating Disabilities; Respira-
tory System, 61 Fed. Reg. 46,720, 46,721 (1996). In re-
sponse, the VA explained that § 3.105(e) "applies only to
reductions in 'compensation payments currently being
made'" and does not apply to situations in which a "total
evaluation is assigned and reduced retroactively." *Id.*; *see*
Appellee's Br. 17; *see also* 38 C.F.R. § 4.97, Diagnostic Code
6819 (diagnostic code for respiratory system neoplasms).

disability for a condition that undisputedly no longer existed—would be overcompensation.

## CONCLUSION

We have considered Mr. Breland's remaining arguments and do not find them persuasive. Because the Veterans Court properly interpreted 38 C.F.R. § 4.114, Diagnostic Code 7343, we affirm.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**WILLIS E. BRELAND,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2199

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-5980, Judge Joseph L. Falvey, Jr., Judge William S. Greenberg, Judge Joseph L. Toth.

---

O'MALLEY, *Circuit Judge*, dissenting.

In December 2006, Willis Breland, a veteran of the Vietnam War, was diagnosed with tongue cancer. He promptly filed an initial claim for service connection. That claim was initially denied but eventually granted on appeal in 2015—long after Mr. Breland's treatment had ended. In 2018—three years after finding that Mr. Breland's tongue cancer was connected to his service in Vietnam—the United States Department of Veterans Affairs ("VA") Regional Office retroactively awarded Mr. Breland a 100% disability rating for his tongue cancer beginning on December 26, 2006 and retroactively reduced those benefits for the period beginning on September 1, 2008, six months

after his treatment ended, pursuant to its interpretation of the note to 38 C.F.R. § 4.114, Diagnostic Code ("DC") 7343. The United States Court of Appeals for Veterans Claims ("Veterans Court") held that the VA correctly interpreted the note to DC 7343. The majority agrees and affirms. Contrary to the majority's holding, the note to DC 7343 unambiguously requires the VA to examine a veteran with tongue cancer to determine their medical condition before reducing the veteran's disability rating from 100%. The VA did not follow that procedure with respect to Mr. Breland. Accordingly, I dissent.

## I.     DISCUSSION

I begin with the unambiguous text of the regulation. The note to DC 7343 is not limited only to prospective benefit awards, and it requires a mandatory VA examination *before* reduction of an award. The analysis could end there, but the regulatory history of the note to DC 7343 confirms that unambiguous reading. It is improper to adopt the atextual interpretation embraced by the majority to avoid providing Mr. Breland with those benefits. The majority says it adopts this atextual reading so as to avoid overcompensating Mr. Breland. While I understand the majority's desire, bad facts make bad law. In the interest of preventing a windfall, the majority creates a rule that will extend far beyond this case; it will affect veterans receiving benefits under any of the many diagnostic codes containing similar notes. Respectfully, I do not understand the desire to misconstrue law so as to the save the VA from its own mistakes.

### A. Text of the Note to DC 7343

Contrary to the majority's decision, the text of the note to DC 7343 does not foreclose its application to retroactive awards. I analyze the sentences of the note one-by-one.

The first sentence states that "[a] rating of 100 percent shall continue beyond the cessation of any [treatment]."

38 C.F.R. § 4.114, DC 7343 Note. The language of this sentence does not foreclose application to retroactively awarded disability ratings. It merely says that ratings "shall continue" after cessation of treatment. Accordingly, a plain reading of the first sentence of the note to DC 7343 is that the note applies to all ratings under DC 7343, not merely prospective ratings. This first sentence also does not contemplate a time limit for the continuation of a 100% rating, implying that, in some circumstances, the 100% rating could continue indefinitely.

The majority states that a rating cannot "continue" unless the note applies only to prospective ratings where "there is an existing 100% rating six months after treatment." Maj. Op. 9. That interpretation of "continue" assumes the conclusion—that it is permissible to retroactively reduce a veteran's benefits absent compliance with the requirements of the note to DC 7343. It is circular to say that, where benefits have already been retroactively reduced, a 100% rating cannot "continue," and, therefore, the note to DC 7343 does not limit that retroactive reduction.

The second sentence states that "[s]ix months after discontinuance of such treatment, the appropriate disability rating shall be determined by mandatory VA examination." 38 C.F.R. § 4.114, DC 7343 Note. Although this sentence provides for a mandatory VA examination six months after the end of treatment, there is no indication that benefits should cease beyond that six-month mark absent the mandatory VA examination. This sentence, like the first, contemplates indefinite continuation of benefits until the VA engages in the dictated examination. This sentence is very specific about the procedure by which the appropriate disability rating must be determined. It mandates that the examination must occur and must be a VA examination.

The Veterans Court held that retroactive reduction of ratings could be based on evidence in the veteran's medical

record other than a VA examination.  The majority affirms
this reasoning, noting that "the VA considered the availa-
ble medical evidence when it assigned" Mr. Breland's rat-
ings.  Maj. Op. 12.  The Veterans Court ignored the text of
the note, which requires "mandatory *VA* examination," in
favor of what it found to be the purpose of the note—"en-
sur[ing] that VA assigns cancer and residual rating and ef-
fective dates based on actual medical findings, rather than
on a set presumptive period." *Breland v. Wilkie*, 32 Vet.
App. 360, 371 (2020).  In Mr. Breland's case, it found that
"Mr. Breland got the benefit of the note to DC 7343—a
100% rating from the date of service connection until 6
months following cessation of treatment for both active
cancer periods" because medical evidence *other than* a VA
examination gave "a clear picture of Mr. Breland's
health[.]" *Id.*  This justification for finding in favor of the
VA here seems to be just that—a justification for ignoring
the note's specific requirement that ratings be based on a
VA examination.

Had the VA wanted any other medical evidence to suf-
fice, it could easily have said, for example, that the appro-
priate disability rating shall be determined by a *medical*
examination or by VA examination or other sufficient med-
ical records.[1]  It did not do so.  It instead specified that "the
appropriate disability rating shall be determined by man-
datory VA examination."  38 C.F.R § 4.114, DC 7343 Note.

---

[1]    Indeed, in similar notes, such as that in 38 C.F.R.
§ 4.119, DC 7903 for hypothyroidism, the VA has not man-
dated a VA examination.  In that note, the VA merely
states:  "This evaluation shall continue for six months be-
yond the date that an examining physician has determined
crisis stabilization.  Thereafter, the residual effects of hy-
pothyroidism shall be rated under the appropriate diagnos-
tic code(s) within the appropriate body system(s) (e.g., eye,
digestive, and mental disorders)."

That language is unambiguous.  And that unambiguous language does not permit the VA to retroactively reduce Mr. Breland's rating simply because it "had a clear picture of Mr. Breland's health and could assign ratings and effective dates based on actual medical findings."  *See Breland*, 32 Vet. App. at 371.

The majority is correct that, in Mr. Breland's case, it would be impossible for the VA to go back in time to conduct an examination six months after the end of treatment.  Indeed, I have no doubt that, due to the speed at which the VA processes disability claims, there are many instances in which the VA will not find a veteran's disability service connected until after the six-month period has elapsed.[2]  But the VA's inability to provide an examination at exactly the six-month mark in this case, and, likely, in others, is not dispositive on the issue of regulatory interpretation before us today.  It is, moreover, a creature of the VA's own making—the VA erred in denying Mr. Breland's claim in the first instance and erred in never affording him the VA examination its own rules mandate.

The second sentence also must be read in conjunction with the next.  The next sentence provides that "[a]ny change in evaluation based upon that or any subsequent

---

[2]    At oral argument, the VA stated that "the VA . . . does assign ratings retroactively" but was otherwise unable to respond to Judge Stoll's question about how often the VA assigns benefits retroactively under DC 7343.  Oral Arg. at 14:10–16:00, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2199_1007202 1.mp3.  In previous cases we have noted that the time that it takes for the VA to decide claims, and in particular, claims that go through the appeals process, can be very long.  *See, e.g.*, *Monk v. Wilkie*, 978 F.3d 1273, 1278 (Fed. Cir. 2020) (Reyna, J., additional views); *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017).

examination shall be subject to the provisions of § 3.105(e) of this chapter."  38 C.F.R. § 4.114, DC 7343 Note.  Importantly, this third sentence provides for changes in evaluation based on the initial six-month examination *or any subsequent examination*.  The VA need not go back in time to provide an examination.  It can provide an examination at any time after six months after cessation of treatment and can base a change in evaluation on *that* subsequent examination.  In Mr. Breland's case, the VA could have provided an examination in 2015 after it found Mr. Breland's cancer was connected to his service in Vietnam and could have reduced his disability evaluation based on that 2015 examination.[3]

The majority glosses over the note's provision that a change in evaluation may be based on a mandatory VA examination six months after cessation of treatment or any subsequent examination.  The Veterans Court's analysis of this third sentence—that, where the "VA is deciding the rating retrospectively, there is no proposed rating change"—also ignores the "subsequent examination" language and, again, assumes the conclusion that a retroactive reduction in rating (absent a mandatory VA examination) does not violate the note to DC 7343.  *See Breland*, 32 Vet. App. at 366.  Contrary to the majority's and Veterans Court's reasoning, the VA's inability to retroactively examine a veteran exactly six months after their treatment ends is not dispositive of the issue of whether the note applies retroactively.  The note has a specific

---

[3]    The record does not show that the VA provided an examination in 2015.  But if the VA failed to provide an examination in 2015, it is the VA's failure alone.  We may not adopt an atextual interpretation of the note to DC 7343 to shield the VA from the natural results of its failure to provide an examination in 2015, or thereafter.

provision for subsequent examination which applies whenever an examination at the six-month mark is impossible.

The third sentence also incorporates 38 C.F.R. § 3.105(e), which provides:

> Where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefor, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. Unless otherwise provided in paragraph (i) of this section, if additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires.

Section 3.105(e), unlike the main text of the note to DC 7343, clearly contemplates prospective reductions in evaluations. It discusses a "service-connected disability," indicating that the reduction must come after the disability has been found to be connected to the veteran's service. And, more tellingly, it identifies "a reduction or discontinuance of compensation payments *currently being made*[.]" 38 C.F.R. § 3.105(e) (emphasis added). But, when read in the context of the main text of the note to DC 7343, the clearly prospective nature of § 3.105(e) does not indicate that the note to DC 7343 must also be only prospective. As explained above, the first three sentences of the note

plainly indicate that a veteran's evaluation under DC 7343 may not be retroactively decreased without a mandatory VA examination six months or more after cessation of the veteran's cancer treatment.  In Mr. Breland's case, for example, he was retroactively awarded a 100% evaluation under DC 7343 in 2015 for the period beginning December 26, 2006.  The VA could have, and should have, provided an examination in 2015 after finding his cancer service connected rather than retroactively decreasing his evaluation without the benefit of a mandatory VA examination.  Had it done so, it would have been prospectively reducing the "evaluation of a service-connected disability" resulting "in a reduction or discontinuance of compensation payments currently being made" in 2015, thus triggering the notice requirements of § 3.105(e).[4]

---

[4]    In the hypothetical scenario where the VA provides a mandatory examination at least six months after cessation of treatment for a veteran whose cancer has not yet been found service connected, VA may be able to retroactively decrease the veteran's evaluation in compliance with the note to DC 7343 without triggering the notice requirements of § 3.105(e).  Indeed, the VA has stated as much in response to a comment on another note nearly identical to the note to DC 7343.  61 Fed. Reg. 46,720, 46721 (1996).  In that Federal Register notice, the VA responded to a commenter's concern that "applying § 3.105(e) will cause administrative problems and will significantly lengthen the period of a total evaluation when claims are received months or years after surgery." *Id*.  The VA explained that: "Since § 3.105(e) applies only to reductions in 'compensation payments currently being made,' it does not apply where a total evaluation is assigned and reduced retroactively." *Id*.  The majority states, in a footnote, that this statement by the VA shows that "for more than twenty years the VA has consistently interpreted the language in

The fourth and final sentence of the note to DC 7343 instructs: "If there has been no local recurrence or metastasis, rate on residuals." 38 C.F.R. § 4.114, DC 7343 Note. This final sentence does not disturb the requirements of the first three sentences to first provide a mandatory VA examination and then provide notice under § 3.105(e) before reducing a veteran's benefits. It merely instructs how ratings should proceed after the VA takes those steps.

The language of the note to DC 7343 is plain—a veteran must receive a mandatory VA examination and, where applicable, notice under § 3.105(e) before the VA reduces his rating. The note does not distinguish between prospective and retroactive ratings. Interpreting the note to exclude retroactive ratings requires a feat of linguistic contortion. The majority's interpretation only works if it assumes that which it seeks to prove—that the note permits a retroactive reduction of a veteran's disability rating without a mandatory VA examination.

## B. Regulatory History

Statements in the VA's Notice of Final Rule amending the note to its current form reinforce the plain meaning of the note to DC 7343:

In order to assure that an evaluation will be based on actual medical findings rather than on a regulatory assumption that there has been improvement,

---

the note as not applying to retroactive awards of benefits." Maj. Op. 11 n.3. That is simply incorrect. The VA stated only that § 3.105(e) "does not apply where a total evaluation is assigned *and reduced retroactively*." 61 Fed. Reg. at 46721 (emphasis added). That is, where a total evaluation is otherwise lawfully retroactively reduced, § 3.105(e) does not apply. The VA said nothing about whether DC 7343 or similar notes permit retroactive reduction of evaluation without a mandatory VA examination.

> we are proposing to continue the total evaluation
> under this code *indefinitely* after treatment is dis-
> continued, and to examine the veteran six months
> after treatment ends.

65 Fed. Reg at 48,206 (emphasis added). The Veterans
Court homed in on the VA's statement that the amendment
was intended to ensure that evaluation is "based on actual
medical findings rather than on a regulatory assumption"
to justify the VA's reliance on medical evidence other than
a mandatory VA examination in Mr. Breland's case.
*Breland*, 32 Vet. App. at 371 (2020). The majority, without
investigating or analyzing that regulatory history itself,
finds that "the Veterans Court correctly stated [that] 'the
history and purpose of the regulation reinforce[] [this]
reading of the note.'" Maj. Op. 11 (quoting *Breland*, 32 Vet.
App. at 367). But the Veterans Court ignored the method
that the VA elected to pursue its purpose—"continu[ing]
the total evaluation under this code *indefinitely* after treat-
ment is discontinued" and "examin[ing] the veteran six
months after treatment ends." *See* 65 Fed. Reg at 48,206
(emphasis added). It is that specific method which the VA
ultimately enacted in the text of the note to DC 7343. We
cannot ignore the text of the regulation in our quest to fur-
ther one of the purposes behind it.

Nor can we cherry-pick the legislative history for a de-
sired outcome—six months of benefits after cessation of
treatment—when that legislative history explicitly pro-
vides to the contrary—that the purpose of the note is to
"continue the total evaluation under this code *indefinitely*."
*See id.* (emphasis added). This purpose is confirmed by the
VA's statements in litigation concerning an analogous note,
DC 7351,[5] in which the Secretary contended that a veteran

---

[5]    The analogous note, which appears in 38 C.F.R.
§ 4.114, DC 7351, states that:

can receive a 100% rating "for an indefinite period." *Nyeholt v. Sec'y of Veterans Affs.*, 298 F.3d 1350, 1356 (Fed. Cir. 2002).

## II.   CONCLUSION

A veteran cannot get the benefit of the note to DC 7343 where the VA refuses to follow the plain language of that note. The Veterans Court found that "Mr. Breland got the benefit of the note to DC 7343" because he got "a 100% rating from the date of service connection until 6 months following cessation of treatment[.]" *Breland*, 32 Vet. App. at 371. But the note was not intended to secure merely six months of benefits following the cessation of a veteran's treatment. The note to DC 7343 does not state that a veteran's 100% evaluation shall continue for six months. Rather it states that the 100% evaluation shall continue, without limiting that continuance to any period of time. And the regulatory history of the note explicitly confirms that an evaluation should continue indefinitely until a mandatory VA examination determines otherwise. The note clearly explains what steps the VA must take before it can reduce a veteran's evaluation. The VA did not take those steps in this case.

The majority may be right that awarding Mr. Breland disability compensation at 100% for tongue cancer rather

---

A rating of 100 percent shall be assigned as of the date of hospital admission for transplant surgery and shall continue. One year following discharge, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter.

than 60% for residuals from that tongue cancer from 2008 until such date as the VA performs a medical examination in compliance with the note to DC 7343 is "overcompensation." Maj. Op. 13. But it is not the role of the courts to protect the VA from the clear language of its own regulations in order to avoid potential overcompensation of a single veteran. If the VA does not wish to be held to the language of the note to DC 7343, it is free to amend that language through its rulemaking process.

As I said earlier, we should not let bad facts make bad law. The impact of the majority's tortured interpretation of the note to DC 7343 is not limited to Mr. Breland's case or even to this particular diagnostic code, despite the majority's disclaimer to the contrary. Similar notes appear in numerous other diagnostic codes. *See, e.g.*, 38 C.F.R. § 4.73, DC 5327 (Muscle, neoplasm of, malignant (excluding soft tissue sarcoma)); 38 C.F.R. § 4.73, DC 5329 (Sarcoma, soft tissue (of muscle, fat, or fibrous connective tissue)); 38 C.F.R. § 4.79, DC 6014 (Malignant neoplasms of the eye, orbit, and adnexa (excluding skin)); 38 C.F.R. § 4.87, DC 6208 (Malignant neoplasm of the ear); 38 C.F.R. § 4.88b, DC 6301 (Visceral leishmaniasis); 38 C.F.R. § 4.88b, DC 6312 (Nontuberculosis mycobacterium infection); 38 C.F.R. § 4.88b, DC 6302 (Leprosy (Hansen's disease)); 38 C.F.R. § 4.88b, DC 6325 (Hyperinfection syndrome or disseminated strongyloidiasis); 38 C.F.R. § 4.97, DC 6819 (Neoplasms, malignant, any specified part of respiratory system exclusive of skin growths); 38 C.F.R. § 4.104, DC 7011 (Ventricular arrhythmias (sustained)); 38 C.F.R. § 4.104, DC 7016 (Heart valve replacement (prosthesis)); 38 C.F.R. § 4.104, DC 7019 (Cardiac transplantation); 38 C.F.R. § 4.104, DC 7110 (Aortic aneurysm); 38 C.F.R. § 4.104, DC 7111 (Aneurysm, any large artery); 38 C.F.R. § 4.104, DC 7123 (Soft tissue sarcoma (of vascular origin)); 38 C.F.R. § 4.114, DC 7351 (Liver transplant); 38 C.F.R. § 4.115b, DC 7528 (Malignant neoplasms of the genitourinary system); 38 C.F.R. § 4.115b, DC 7531

(Kidney transplant); 38 C.F.R. § 4.116, DC 7627 (Malignant neoplasms of gynecological system); 38 C.F.R. § 4.116, DC 7630 (Malignant neoplasms of the breast); 38 C.F.R. § 4.117, DC 7702 (Agranulocytosis); 38 C.F.R. § 4.117, DC 7703 (Leukemia); 38 C.F.R. § 4.117, DC 7704 (Polycythemia); 38 C.F.R. § 4.117, DC 7705 (Immune thrombocytopenia); 38 C.F.R. § 4.117, DC 7709 (Hodgkin's lymphoma); 38 C.F.R. § 4.117, DC 7712 (Multiple myeloma); 38 C.F.R. § 4.117, DC 7715 (Non-Hodgkin's lymphoma); 38 C.F.R. § 4.117, DC 7716 (Aplastic anemia); 38 C.F.R. § 4.117, DC 7718 (Essential thrombocythemia and primary myelofibrosis); 38 C.F.R. § 4.117, DC 7719 (Chronic myelogenous leukemia); 38 C.F.R. § 4.117, DC 7722 (Pernicious anemia and Vitamin B12 deficiency anemia); 38 C.F.R. § 4.117, DC 7723 (Acquired hemolytic anemia); 38 C.F.R. § 4.117, DC 7725 (Myelodysplastic syndromes); 38 C.F.R. § 4.118, DC 7818 (Malignant skin neoplasms (other than malignant melanoma)); 38 C.F.R. § 4.118, DC 7833 (Malignant melanoma); 38 C.F.R. § 4.119, DC 7914 (Neoplasm, malignant, any specified part of the endocrine system); 38 C.F.R. § 4.150, DC 9918 (Neoplasm, hard and soft tissue, malignant). If the VA were to interpret these identical or nearly identical notes contrary to the majority's interpretation of the note to DC 7343, that would be the definition of an *arbitrary* interpretation which the VA is not permitted to make. *See* 5 U.S.C. § 706(2)(A).

The majority's interpretation of the note to DC 7343 is unmoored from the text of the regulation. That erroneous interpretation will reverberate through the Code of Federal Regulations, impacting veterans whose disabilities fall under any of the many diagnostic codes that have similar notes. We have often said we must base our decisions on the text of governing statutes and regulations, even where the Veteran who loses benefits as a result of doing so has a very sympathetic claim. We cannot allow ourselves to do the contrary when the VA pleads for sympathy for its own mistake. For these reasons, I dissent.